UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

PAMELA HERRINGTON, individually and on behalf of all others similarly situated,

            Plaintiff(s),

-against-                                                   3:11-cv-00779

WATERSTONE MORTGAGE CORPORATION,

            Defendant.

---

## CLASS ACTION COMPLAINT

**INTRODUCTION**

1. This case is brought to remedy the failure of Defendant WATERSTONE MORTGAGE CORPORATION ("WATERSTONE"), to pay Plaintiffs minimum wages and overtime premium pay as required by the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 et seq., and the common law of contract and quasi-contract. Plaintiffs are mortgage loan officers ("loan officers") for WATERSTONE. Like loan officers throughout the mortgage industry, they work very long hours.

2. Prior to April 2011, WATERSTONE treated its mortgage loan officers as exempt from the FLSA and failed to record their hours of work. On March 24, 2010, the U.S. Department of Labor issued an administrative Interpretation of the FLSA declaring that loan officers were not administratively exempt from the FLSA and withdrawing a prior Wage Hour Opinion Letter to the contrary. Upon information and belief, WATERSTONE was well aware of the change, which was well publicized in the mortgage industry. Nevertheless, WATERSTONE did not begin to record loan officers hours of work and did not move to pay loan officers overtime for hours over forty in a

1

work week.

3. In or about April, 2011, WATERSTONE explicitly recognized that their loan officers are not exempt from the FLSA and sent its loan officers a new written employment agreement, under which it changed its compensation structure to pay them an hourly wage set at the minimum wage rate plus a monthly commission, from which the hourly pay during that pay period was to be deducted. WATERSTONE then began treating its loan officers as FLSA non-exempt hourly workers requiring that it pay loan officers the minimum wage for each work week, with overtime at the rate of time and one half for each hour over forty worked in a workweek. Because it had begun paying loan officers hourly, and because WATERSTONE recognized that loan officers are not exempt from the FLSA, WATERSTONE was required to pay the minimum wage for each hour worked and time and one half for all hours over forty worked in a workweek.

4. After the change in April 2011, to evade its FLSA obligations as well as its contractual promise to loan officers, WATERSTONE pressured its loan officers to underreport their work hours. WATERSTONE and its officials and supervisors told loan officers that no matter how many hours they worked, they should not report more than eight hours in a day, and it pressured them not to report more than forty hours per week on their time sheets. In fact, for a period of time, WATERSTONE's time keeping system would not allow Loan Officers to report more than 40 hours in a week.

5. Commissioned loan officers must work long hours, well over forty in a week, in order to make money, since they must engage in extensive promotional activities necessary to originating loans, activities such as meeting with realtors and attorneys, attending open houses, networking, and working to process their loans through to closing.

6. WATERSTONE requires loan officers to bear expenses which are for the benefit and convenience of WATERSTONE, such as licensing, meeting, travel, internet, and cell phone expenses, among others. These expenses for the benefit and convenience of WATERSTONE act as deductions or *de facto* deductions from the minimum wage earnings of the Plaintiffs.

7. WATERSTONE knew or should have known that loan officers worked hours in excess of those they reported, because WATERSTONE pressured them to underreport their hours and WATERSTONE's time keeping system would not allow recording hours over forty. WATERSTONE knew that loan officers had worked long hours prior to moving to the new compensation system, that in fact loan officers routinely worked 8-12 hours per day, 5-6 days per week. Defendant WATERSTONE knows that loan officers never work routine hours, and because WATERSTONE had not changed loan officers' responsibilities when it moved to the new compensation system, they knew that loan officers typically work well over 40 hours in a week.`

8. WATERSTONE also knew or should have known that Plaintiffs were required to bear WATERSTONE's business expenses.

9. While WATERSTONE's contract with loan officers stated that "Commissions are calculated by deducting the Base Pay *paid during the current pay period* from the aggregate commission calculated pursuant to Addendum A." WATERSTONE uses a bi-weekly pay period and pays commissions on a monthly basis, if any were earned. However, WATERSTONE deducted from the commissions it paid the Base Pay earned by loan officers over the entire month. If Base Pay exceeded the commission due in any given month, such Base Pay amounts were carried forward until commissions exceeded

3

the aggregate Base Pay made to date.

10. Plaintiff seek unpaid wages for the overtime hours they worked but were pressured not to report, liquidated damages, costs and attorneys' fees as well as declaratory relief. Plaintiff brings this claim individually and on behalf of other similarly situated employees under the collective action provisions of the FLSA. 29 U.S.C. § 216(b).

11. In addition, by the conduct described in this Class Action Complaint, Defendant has violated the common law of contract as well as the wage and hour laws of the various states in which the loan officers worked, by failing to pay their employees the promised overtime compensation at the rate of time and one half, and by making *de facto* unlawful deductions from the Plaintiff(s)' minimum wages, by failing to pay for the employers' business expenses which were borne by the Plaintiff(s), and by paying commissions in an amount below that provided by the contract it entered into with the Plaintiffs.

12. Defendant has also violated the common law doctrines of contract and quasi-contract by failing to honor its promise to pay premium pay at the rate of time and one half, and by failing to reimburse Plaintiff for the employers' expenses. Plaintiff HERRINGTON brings these claims individually and on behalf of other similarly situated employees under the class action provisions of Fed. R. Civ. P. 23.

**JURISDICTION**

13. Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b) of the Fair Labor Standards Act, by 28 U.S.C. §1331, this action arising under laws of the United States, and by 28 U.S.C. §1337, this action arising under Acts of Congress regulating commerce. Jurisdiction over Plaintiff(s) ' claims for declaratory relief is conferred by 28 U.S.C. §§2201 and 2202.

14. This Court has supplemental jurisdiction over the state claim raised by virtue of 28 U.S.C. §1367(a).

**VENUE**

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

16. Upon information and belief, Defendant WATERSTONE resides in this district.

17. Plaintiff labored for Defendant within this District.

18. The cause of action set forth in this Complaint arose in this District.

**PARTIES**

**A.    Plaintiff(s)**

19. Plaintiff HERRINGTON was an employee of Defendant. Her "Consent to Sue" is attached to the back of this complaint.

20. Plaintiff HERRINGTON worked for Defendant in the state of Arizona.

21. Plaintiff HERRINGTON was engaged in commerce in her work for Defendant.

**B.    Represented Parties under FLSA**

22. The term "Plaintiff(s) " as used in this complaint refers to the named plaintiff(s) and any additional represented class members pursuant to the collective action provision of 29 U.S.C. §216(b).

23. The named plaintiff(s) represent current and former "all loan officers who have worked for WATERSTONE between March 24, 2010 and the date of final judgment in this matter in a non-supervisory capacity."

24. The named Plaintiff bring this case as a collective action for class members throughout the U.S. as defined in the preceding paragraph, under the collective action provision of the FLSA as set forth in 29 U.S.C. §216(b).

5

C.  **Class Action Allegations**

25. Plaintiff HERRINGTON brings the Second, Third, and Fourth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of "all mortgage loan officers who have worked for WATERSTONE or WATERSTONE since March 24, 2010 and the date of final judgment in this matter in a non-supervisory capacity."

26. Excluded from the Class are Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendant; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

27. The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiff(s), the facts on which the calculation of that number can be based are presently within the sole control of Defendant.

28. Upon information and belief, the size of the Class is at least 100 loan officers.

29. Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

30. The Second Cause of Action is properly maintainable as a nationwide class action under Federal Rule of Civil Procedure 23(b) (3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

  a. whether Defendant pressured Plaintiff not to correctly report their hours;

  b. whether Defendant failed to keep true and accurate time records for all hours worked by the Plaintiff and the Class;

  c. what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

  d. whether Defendant failed and/or refused to pay the Plaintiff and the Class overtime pay for hours worked in excess of 40 hours per workweek;

  e. the nature and extent of Class-wide injury and the appropriate measure of damages for the Class;

  f. whether Defendant's policy of failing to pay overtime was instituted willfully or with reckless disregard of the law;

  g. whether Defendant correctly calculated and compensated the Plaintiff and the Class for hours worked in excess of 40 per workweek;

  h. whether Defendant failed to pay all the commission earnings to which it had agreed in its employment agreement with Plaintiffs; and

  i. whether Defendant wrongfully failed to reimburse loan officers for employer expenses which effected a *de facto* deduction from the wages due to Plaintiff.

31. The claims of the Plaintiff are typical of the claims of the Class they seek to represent. The Plaintiff and the Class members work or have worked for Defendant and have been subjected to their policy and pattern or practice of failing to pay overtime wages for hours worked in excess of 40 hours per week. Defendant acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief with respect to the

7

Class appropriate.

32. The Plaintiff will fairly and adequately represent and protect the interests of the Class.

   a. The Plaintiff understands that, as class representatives, they assume a fiduciary responsibility to the Class to represent its interests fairly and adequately.

   b. The Plaintiff recognizes that as a class representative, she must represent and consider the interests of the Class just as she would represent and consider her own interests.

   c. The Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over those of the Class.

   d. The Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class.

   e. The Plaintiff understand that in order to provide adequate representation, she must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in her possession, and testify, if required, in a deposition and in trial.

33. The Plaintiff has retained counsel competent and experienced in complex class action employment litigation.

34. A class action is superior to other available methods for the fair and efficient adjudication of this litigation - particularly in the context of wage litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Class have been damaged and are entitled to recovery as a result of Defendant's common and

uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation against WATERSTONE. In addition, class treatment is superior because it will obviate the need for unduly

duplicative litigation that might result in inconsistent judgments about Defendant' practices.

### D. Defendant

35. Defendant WATERSTONE lists its principal office address as 1133 Quall Court, Pewaukee, Wisconsin 53072. Upon information and belief, Defendant WATERSTONE is a corporation having its headquarters and office in Wisconsin and places of business in Wisconsin.

36. Defendant WATERSTONE is southeastern Wisconsin's largest mortgage lender with more than $1.1 billion in annual origination volume. It is a wholly owned subsidiary of an FDIC bank, WaterStone Bank SSB (NASDAQ: WSBF) which has assets of more than $1.7 billion. WATERSTONE has more than 400 employees in 12 states: Arizona, Colorado, Florida, Iowa, Idaho, Illinois, Maryland, Minnesota, Ohio, Pennsylvania, Tennessee, and Wisconsin.

37. Upon information and belief, Defendant WATERSTONE grossed more than $500,000 in each of the last ten calendar years.

38. Defendant WATERSTONE is an enterprise engaged in interstate commerce for purposes of the Fair Labor Standards Act.

39. WATERSTONE employed Plaintiffs and participated directly in employment decisions

regarding the Plaintiffs for which they seek redress in this case.

40. All actions and omissions described in this complaint were made by Defendant directly or through its supervisory employees and agents.

**FACTS**

41. Plaintiff HERRINGTON began employment with Defendant in or about January 28, 2011. Plaintiff HERRINGTON left employment with Defendant on or about October 7, 2011.

42. Plaintiffs are or were loan officers employed by WATERSTONE to originate mortgage loans.

43. Plaintiff(s)' job responsibilities were established by Defendant WATERSTONE.

44. Plaintiff and class members regularly worked more than 40 hours per week for Defendant. Plaintiffs regularly work 60 or more hours per week.

45. Prior to April 2011, WATERSTONE treated its mortgage loan officers as exempt from the FLSA.

46. From January to April 2011, Plaintiff HERRINGTON was paid on a salary basis.

47. On March 24, 2010, the U.S. Department of Labor issued an administrative Interpretation of the FLSA declaring that loan officers were not administratively exempt from the FLSA and withdrawing a prior Wage Hour Opinion Letter to the contrary.

48. Upon information and belief, WATERSTONE was well aware of the change, which was well publicized in the mortgage industry. Nevertheless, WATERSTONE did not begin to record loan officers hours of work and did not move to pay loan officers overtime for hours over forty in a work week until April 2011.

49. The recording and tracking of plaintiff loan officers' work is administered and monitored

10

by Defendant WATERSTONE on computerized time keeping systems.

50. Defendants and their pay systems have refused to permit Plaintiffs to enter their actual hours of work to the extent these hours exceed forty in a work week.

51. In or about April 2011, Defendant WATERSTONE changed its compensation structure, sending each loan officer a new written employment agreement to be executed by the company and the loan officer. The new employment agreement agreed to pay loan officers under a combination commission and hourly wage structure. According to the new agreement, the pay would consist of a monthly commission, from which the hourly pay during that current pay period was to be deducted.

52. Beginning in April 2011, WATERSTONE treated loan officers as FLSA non-exempt hourly workers requiring that it pay loan officers at least the minimum wage for each work week, with overtime at the rate of time and one half for each hour over forty worked in a workweek.

53. WATERSTONE promised its loan officers that they would receive a regular hourly rate at or near the minimum wage rate.

54. To evade its FLSA obligations as well as its contractual promise to loan officers, WATERSTONE pressured its loan officers to underreport their work hours.

55. WATERSTONE officials told loan officers not to correctly report their hours. They told Plaintiffs that no matter how many hours they worked, they should not report more than eight hours in a work day. The Plaintiffs were pressured not to report more than forty on their time sheets.

56. Loan officers must work long hours, well over forty in a week, in order to make commission income exceeding their floor, since they must engage in extensive

promotional activities necessary to originating loans, activities such as meeting with realtors and attorneys, attending open houses, networking, etc. They must also engage in extensive loan processing activities to see that the loans they originate are processed through to closing.

57. Defendant knew or should have known that Plaintiff and class members were working in excess of forty hours in a work week.

58. Loan officers told Defendant that they were working overtime hours but reporting only forty.

59. Defendant knew or should have known that Plaintiff and class members were not recording all the hours they worked, particularly those in excess of forty hours in a week.

60. Defendant knew or should have known that Plaintiff were recording their hours of work in rote fashion even though a loan officers' hours are never routine, since they must answer calls from prospective customers at all hours of the day, including in the evening and on weekends.

61. WATERSTONE requires loan officers to bear expenses which are for the benefit and convenience of WATERSTONE, such as travel expenses, internet, training, and cell phone expenses, among others.

62. Defendant discouraged Plaintiff and class members from recording hours of work in excess of forty in a work week.

63. Upon information and belief, Defendant failed to keep accurate time records for all the work Plaintiff and the class members did on a daily or weekly basis.

64. Defendant failed to pay the Named Plaintiff and the class members overtime compensation at the rate of time and one-half for all hours worked over 40 in a week.

65. Defendant did not pay Plaintiff and the class members their wages "free and clear."

66. WATERSTONE's contract with loan officers stated that "Commissions are calculated by deducting the Base Pay *paid during the current pay period* from the aggregate commission calculated pursuant to Addendum A."

67. WATERSTONE uses a bi-weekly pay period and pays commissions on a monthly basis, if any were earned.

68. From the commissions it was to pay, WATERSTONE deducted the Base Pay earned by loan officers over the entire month as well as any base pay from prior months not yet counted against any commissions, not merely the Base pay "paid during the current pay period." If Base Pay exceeded the commission due in any given month, such excess Base Pay amounts were carried forward until commissions exceeded the aggregate Base Pay made to date.

69. Defendant required Plaintiff to purchase tools of the trade for their work for Defendant, which included cell phones, video conferencing, and computers.

70. Defendant failed to reimburse Plaintiff for their purchase of all work tools and supplies.

71. Beginning in April 2011, Defendant promised to pay Plaintiff a set hourly rate (generally set at or near the minimum wage) for all straight time hours and time and one half their regular hourly rate for hours worked over 40 in a week.

72. This promise was stated in a contract given to each loan officer.

73. Defendant failed to pay Plaintiff their regular rate for each hour they worked.

74. Defendant's stated policy was to pay Plaintiffs time and one half their regular hourly rate for hours worked over 40 in a week.

75. Defendant did not pay Plaintiffs time and one half their regular hourly rate for hours worked

over 40 in a week.

76. Defendant did not pay Plaintiffs minimum wages or overtime in compliance with their promise to do so or in compliance with federal law.

77. Defendant's failure to pay Plaintiff and class members the proper wages required by law was willful.

## CLASS-WIDE FACTUAL ALLEGATIONS

78. Defendant failed to accurately record Plaintiffs start and stop time and daily and weekly hours of work.

79. Defendant knew or should have known that Plaintiffs worked hours over forty and worked hours that they did not report.

80. Upon information and belief, it was Defendant's willful policy and pattern or practice not to pay its employees, including Plaintiffs, the Class Members, and the FLSA Collective Members (collectively "Class Members"), for all hours of work at their promised rate of pay, at the regular rate of pay, or pay an overtime premium for all work that exceeded 40 hours in a week, or in the amount agreed to by its employment agreement with loan officers.

81. Defendant's unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiff and the Class Members.

82. Defendant was aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiff and the Class Members, an overtime premium of time and one half for all work-hours it suffered or permitted in excess of 40 per workweek. Upon information and belief, Defendant applied the same unlawful policies and practices to its employees in every state in which it operated.

## FIRST CAUSE OF ACTION
## (FAIR LABOR STANDARDS ACT)

83. Defendant failed to pay overtime wages to Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. §207 et seq. and its implementing regulations.

84. Defendant's failure to pay proper wages for each hour worked over 40 per week was willful within the meaning of the FLSA.

85. Defendant failed to pay minimum wages to Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. §206 et seq. and its implementing regulations.

86. Defendant's failure to pay proper minimum wages for each hour worked per week was willful within the meaning of the FLSA.

87. Defendant's failure to comply with the FLSA overtime and minimum wage protections caused Plaintiff to suffer loss of wages and interest thereon.

## SECOND CAUSE OF ACTION
## (COMMON LAW CONTRACT
## AND/OR QUASI-CONTRACT)

88. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

89. Defendant promised orally and in writing to pay Plaintiffs at a set hourly rate for each hour of work up to forty in a work week, and at the rate of time and one half for hours worked over forty.

90. Defendant promised in writing to pay Plaintiffs a commission in accordance with an attached commission schedule deducting only the Base Pay *paid during the current pay period* yet it violated its written promise by also deducting Base Pay from prior pay periods, thereby failing to pay all the commissions it was contractually obligated to pay.

91. Plaintiffs performed labor for Defendant knowing of Defendant's promise.

92. Defendant failed to pay the promised regular rate and the overtime premium wages for the hours it knew or should have known that Plaintiffs worked in violation of their promise to pay

such wages.

93. Defendant's failure to pay overtime as promised violated Plaintiffs' rights under the common law doctrines of contract and/or quasi-contract.

**WHEREFORE,** Plaintiff requests that this Court enter an Order:

1. Declaring that the Defendant violated the Fair Labor Standards Act;

2. Declaring that the Defendant's violations of the FLSA were willful;

3. Granting judgment to Plaintiff and represented parties for their claims of unpaid wages as secured by the Fair Labor Standards Act, as well as an equal amount in liquidated damages;

4. Awarding Plaintiff and represented parties their costs and reasonable attorneys' fees; and

5. With respect to the Class:

   A. Certification of this action as a class action;

   B. Designation of Plaintiff as Class Representatives;

   C. A declaratory judgment that the practices complained of herein are unlawful under appropriate state law, including contract and state minimum wage and overtime guarantees;

   D. Granting Plaintiff appropriate equitable and injunctive relief to remedy Defendant's violations of state law, including but not necessarily limited to an order enjoining Defendant from continuing its unlawful practices;

   E. Granting an award of damages, liquidated damages, appropriate statutory penalties, and restitution to be paid by Defendant according to proof;

   F. Granting an award of Pre-Judgment and Post-Judgment interest, as provided

      by law;

G.    Granting such other injunctive and equitable relief as the Court may deem just and proper; and

H.    Awarding Plaintiff attorneys' fees and costs of suit, including expert fees and costs.

Dated: November 23, 2011

                                          Respectfully Submitted,

*/s/ Dan Getman*

Dan Getman (Pro Hac Vice)
GETMAN & SWEENEY, PLLC
9 Paradies Lane
New Paltz, NY 12561
phone: (845)255-9370
fax: (845) 255-8649
Email: dgetman@getmansweeney.com

ATTORNEYS FOR PLAINTIFF(S)