IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAMELA HERRINGTON,
individually and on behalf of all
others similarly situated,

                                               OPINION AND ORDER

                Plaintiff,

                                            11-cv-779-bbc

       v.

WATERSTONE MORTGAGE CORPORATION,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In 2011, plaintiff Pamela Herrington filed this proposed class action under the Fair

Labor Standards Act and state law, alleging that defendant Waterstone Mortgage

Corporation failed to pay its loan officers for overtime work. In an order dated March 16,

2012, dkt. #57, I concluded that plaintiff's claims would have to be resolved through

arbitration under an agreement between the parties.  However, in accordance with In re D.R.

Horton, Inc., 357 NLRB No. 184 (2012), available at 2012 WL 36274, I also concluded

that the National Labor Relations Act gave plaintiff the right to join other employees to her

claims, despite a provision in the arbitration agreement to the contrary. I closed the case

administratively to allow the parties to proceed with arbitration.

      Now before the court is defendant's fourth request to reopen the case since I sent it

to arbitration.  The first time defendant challenged a decision by the arbitrator that the

arbitration agreement permits class arbitration, dkt. #61; the second time defendant challenged the arbitrator's order limiting communication with potential class members, dkt. #64; the third time defendant challenged an interim award of attorney fees, dkt. #74. I denied the first two requests because they were premature and because defendant failed to show that it was entitled to relief on the merits under the applicable standard of review. Dkt. #72. Defendant withdrew its third request the day after plaintiff filed her opposition brief. Dkt. #80.

In defendant's fourth and most recent request, it asks this court to reconsider the portion of the March 16, 2012 decision in which I concluded that "plaintiff must be allowed to join other employees to her case." Dkt. #57 at 18. Defendant relies primarily on D.R. Horton, Inc. v. NLRB, 737 F.3d 344 (5th Cir. 2013), which overturned the decision of the National Labor Relations Board. It seeks relief under Fed. R. Civ. P. 60(b)(6), which allows a court to vacate a final judgment or order for "any other reason that justifies relief."

After considering the standard of review for a motion brought under Rule 60(b)(6) and the reasoning of the Court of Appeals for the Fifth Circuit and the other cases defendant cites, I am declining to vacate the March 2012 order. Although I acknowledge that the weight of authority developed since that order favors defendant's view, I am not persuaded that the answer is so clear as to justify the relief that defendant seeks. It may be that ultimately the Supreme Court or the Court of Appeals for the Seventh Circuit will agree with defendant, but until that time, I will adhere to the decision of the board.

OPINION

As it did in some of its other motions to reopen, defendant initially ignored a threshold question, which is whether this court even has jurisdiction to reconsider a previous order while a case is proceeding in arbitration, almost two years after the court issued the order defendant is challenging.  In her opposition brief, plaintiff cites various cases for the general proposition that only one tribunal may have jurisdiction over the same proceeding at one time.  Patterson v. Wendel, 983 F.2d 1073 (7th Cir. 1992); Shevlin v. Schewe, 809 F.2d 447, 451 (7th Cir. 1987); United States v. One 1979 Rolls-Royce Corniche Convertible, 770 F.2d 713, 716 (7th Cir. 1985); Canterbery v. Petrovich, 07 Civ. 0584-MJR, 2008 WL 63263, *3 (S.D. Ill. Jan. 3, 2008).  However, none of these cases involved an arbitration proceeding, much less raised the specific question whether a district court has authority to reconsider its own decisions while a related arbitration is pending.  In its reply brief, defendant cites various cases for the proposition that arbitrability is a question for the court, e.g., Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002), but that argument is a non sequitur.  There is no dispute that district courts may decide in the first instance whether an arbitration clause is valid; the question is whether a district court may reconsider that decision while the case is proceeding in arbitration.

Defendant also cites Nielsen v. Piper, Jaffray & Hopwood, Inc., 66 F.3d 145, 147 (7th Cir. 1995), which is closer to the mark.  In Nielsen, the district court had granted a motion to reconsider an order compelling arbitration, even though the motion was filed approximately nine months after the court issued the order.  However, Nielsen provides

limited guidance because no party challenged the district court's authority to reconsider its decision and the court of appeals did not state whether the arbitration proceedings had begun at the time the motion for reconsideration was filed.  In my own research, I uncovered University Life Insurance Co. of America v. Unimarc Ltd., 699 F.2d 846, 850 (7th Cir. 1983), in which the court stated in dicta that, "[i]f [the district court] had ordered arbitration, and left it at that, it would still be open to the parties—as it would be to the parties to any completed litigation—to go back to [it] for interpretation or modification of an order, the order to arbitrate, having an ongoing effect."  This statement suggests that a motion for reconsideration of an order regarding arbitrability should be treated like any other motion brought under Fed. R. Civ. P. 60, at least while the order has "an ongoing effect."  (Another aspect of University Life Insurance was superseded by 9 U.S.C. § 16(b), as noted in Amgen, Inc. v. Kidney Center of Delaware County, Ltd., 95 F.3d 562, 565 (7th Cir. 1996), but that aspect is not relevant to the quoted language.)

Even if I assume that I have jurisdiction to consider defendant's motion, defendant has not shown that "extraordinary circumstances" exist to justify a grant of relief under Rule 60(b)(6).  Arrieta v. Battaglia, 461 F.3d 861, 865 (7th Cir. 2006).  Defendant's sole reason for seeking relief is new case law supporting a view that employees cannot rely on the NLRA to invalidate arbitration provisions that prohibit joint litigation.   However, as the Court of Appeals for the Seventh Circuit recently reaffirmed, "a change in law showing that a previous judgment may have been incorrect is not an 'extraordinary circumstance' justifying relief under Rule 60(b)(6)."  Nash v. Hepp, — F.3d —, 12-1786, 2014 WL 187107 (7th Cir. Jan.

4

17, 2014).  In its reply brief, defendant argues that the general rule does not apply because most motions brought under Rule 60 involve situations in which the case is no longer pending in any forum.  Although that argument has some force, defendant cites no authority to support it.  Further, as plaintiff points out, the decision of the Court of Appeals of the Fifth Circuit is neither final (because it could be overturned *en banc* or by the Supreme Court) nor binding (because neither this court nor the National Labor Relations Board is bound to follow the Court of Appeals for the Fifth Circuit.  Nielsen Lithographing Co. v. NLRB, 854 F.2d 1063, 1066 (7th Cir. 1988)).  Under these circumstances, it would be premature to grant defendant's requested relief.

Finally, I am not persuaded that the board's decision is incorrect.  The reasoning followed by the board is straightforward:  (1) under the NLRA, "[e]mployees shall have the right to . . . engage in . . . concerted activities for the purpose of . . . mutual aid or protection," 29 U.S.C. § 157, and employers may not "interfere with, restrain, or coerce employees in the exercise of" that right, 29 U.S.C. § 158(a)(1); (2) both courts and the board have found consistently that lawsuits for unpaid wages brought by multiple plaintiffs may be one type of "concerted activity" protected by §§ 157 and 158(a)(1); (3) an employer interferes with an employee's right to engage in concerted activities by requiring her to sign an agreement that includes a prohibition on collective actions by employees; (4) there is no conflict between the Federal Arbitration Act and the NLRA because the Federal Arbitration Act does not require the enforcement of arbitration agreements that conflict with substantive provisions of federal law.  In re D.R. Horton, Inc., 357 NLRB No. 184 (2012), available at

5

2012 WL 36274.

On appeal, the Court of Appeals for the Fifth Circuit did not explicitly question the board's first three conclusions or identify any reason why those conclusions were not entitled to deference. ABF Freight System, Inc. v. NLRB, 510 U.S. 317, 324 (1994) (board's views regarding scope of NLRA are entitled to "the greatest deference"); Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 891 (1984) (interpretations of NLRA by board will be upheld if "reasonably defensible") (internal citation omitted). See also Delock v. Securitas Security Services USA, Inc., 883 F. Supp. 2d 784, 789 (E.D. Ark. 2012) ("When employees band together to assert FLSA claims, the Board concluded in Horton, they are pursuing concerted activities for mutual aid and protection, which the NLRA protects. This conclusion is a reasonable reading of the statute. . . . The Court therefore defers and follows the Board's reading on this point.") (citations omitted).  Instead, the court of appeals seemed to take issue with the board's conclusion regarding the absence of a conflict between the FAA and the NLRA.

First, the court of appeals seemed to question whether §§ 157 and 158(a)(1) create rights that could overcome a class action waiver.  The court of appeals did *not* challenge the general rule that the FAA does not require the enforcement of an arbitration agreement that violates a substantive federal right.  14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 273 (2009) ("[A] substantive waiver of federally protected civil rights will not be upheld."); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute."); Stawski Distribution Co., Inc. v. Browary Zywiec S.A., 349 F.3d 1023, 1025 (7th

Cir. 2003) ("[S]ubstantive rights are not subject to waiver."); Cange v. Stotler & Co., Inc., 826 F.2d 581, 595 n.11 (7th Cir. 1987) ("[A]n arbitration clause which operated as a prospective waiver of a substantive statutory right could violate public policy and be unenforceable.").  See also Alexander v. Gardner-Denver Co., 415 U.S. 36, 51 (1974) ("[T]here can be no prospective waiver of an employee's rights under Title VII.").  However, the court seemed to question whether a "substantive" right was at issue, noting that the Supreme Court has concluded that the right to proceed as a class under Fed. R. Civ. P. 23 or 29 U.S.C. § 216(b) is a procedural rather than a substantive right.  D.R. Horton, Inc. v. N.L.R.B., 737 F.3d 344, 357 (5th Cir. 2013) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 612–13 (1997); Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 332 (1980)). At the same time, the court acknowledged the distinction the board made between the NLRA and Fed. R. Civ. P. 23 or 29 U.S.C. § 216(b).  In particular, the board wrote:

> Any contention that the Section 7 right to bring a class or collective action is merely "procedural" must fail. The right to engage in collective action—including collective legal action—is the core substantive right protected by the NLRA and is the foundation on which the Act and Federal labor policy rest. . . . Rule 23 may be a procedural rule, but the Section 7 right to act concertedly by invoking Rule 23, Section 216(b), or other legal procedures is not.

D.R. Horton, 2012 WL 36274, at *12 (internal citations omitted).  Thus, it is not clear how §§ 157 and 158(a)(1) can be distinguished from any other substantive right in the employment context, such as the right to be paid a minimum wage or to be free from certain types of discrimination.  Although the court of appeals acknowledged the board's reasoning,

the court did not challenge it, instead restating the point that the right to litigate as a class has been treated as a procedural right in other contexts.

Second, the court of appeals stated that "[t]here is no argument that the NLRA's text contains explicit language of a congressional intent to override the FAA." D.R. Horton, 737 F.3d at 360.  However, the court did not explain why it was necessary to locate language or congressional intent to "override the FAA."  Again, it is well established that an arbitration agreement may not require a party to waive a substantive federal right.  In concluding that the NLRA did not include language supporting the board's position, the court of appeals failed to consider the very provisions on which the board relied, 29 U.S.C. §§ 157 and 158(a)(1), which prohibit an employer from interfering with an employee's right to engage in concerted activities to improve working conditions.  I see no basis for distinguishing these provisions from others that courts have found cannot be waived in an arbitration agreement. E.g., Kristian v. Comcast Corp., 446 F.3d 25, 47–48 (1st Cir. 2006) (finding provision of arbitration agreements barring the recovery of treble damages in an antitrust case invalid because it prevented the vindication of a federal statutory right); Hadnot v. Bay, Ltd., 344 F.3d 474, 478 n. 14 (5th Cir. 2003) (finding agreement waiving punitive and exemplary damages in a Title VII case unenforceable).

Third, the court of appeals stated that "there is no private cause of action against employers to prevent and remedy unfair labor practices under the NLRA; enforcement is left, instead, to the Board."  D.R. Horton, 737 F.3d at 360 n.9.  However, the court did not explain the relevance of this observation.  Again, the question is whether the arbitration

agreement requires the employee to waive a substantive right.  The court of appeals did not cite any authority for the proposition that the parties to an arbitration agreement are free to violate federal rights that are not accompanied by a private right of action.  In this case, plaintiff's federal claim is brought under the FLSA; she relies on the NLRA, not to provide a cause of action, but essentially as a defense to defendant's attempt to enforce a provision of the arbitration agreement.  The Supreme Court already has held that "[w]hile only the Board may provide affirmative remedies for unfair labor practices, a court may not enforce a contract provision which violates" the NLRA.  Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 86 (1982).  See also Jasso v. Money Mart Express, Inc., 879 F. Supp. 2d 1038, 1047 (N.D. Cal. 2012) (rejecting argument that absence of private right of action in NLRA provides grounds for refusing to invalidate contract that violates NLRA).

Fourth, the court of appeals noted "that the NLRA was enacted and reenacted prior to the advent in 1966 of modern class action practice," meaning that, under the board's ruling, "the NLRA would have to be protecting a right of access to a procedure that did not exist when the NLRA was (re)enacted."  D.R. Horton, 737 F.3d at 362.  Again, the significance of this observation is not apparent.  There are many situations that fall within the scope of a law, but were not necessarily anticipated at the time the law was passed.  For example, video games and thermal imaging did not exist at the time the First Amendment and Fourth Amendment were enacted, but that has not stopped the Supreme Court from applying those amendments to either situation.  Brown v. Entertainment Merchants Association, — U.S. — , 131 S. Ct. 2729, 2733 (2011); Kyllo v. United States, 533 U.S. 27

(2001).

"[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79 (1998).  In other words, the question should be what the plain language of the statute covers, not when the activity at issue first arose.  Again, the court of appeals did not directly challenge the board's construction of the NLRA as encompassing the right for employees to file class actions, much less cite any authority for the proposition that the board's interpretation was unreasonable because it included a "concerted activity" that postdated the NLRA's enactment.

Fifth, the court of appeals relied heavily on AT&T Mobility LLC v. Concepcion,131 S.Ct. 1740, 1746 (2011), in which the Supreme Court concluded that the FAA preempted a state law that prohibited class action waivers.  Although the Court did not  point to any textual conflict between the FAA and the state law, it stated that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Id. at 1748.

To be sure, Concepcion and the board's decision in Horton point in different directions.  However, the board distinguished Concepcion on the ground that it did not involve the waiver of a substantive federal right.  I accepted this distinction in the March 2012 order and defendant has not identified any new grounds for changing that view.

Finally, the court of appeals stated that "[e]very one of our sister circuits to consider

10

the issue has either suggested or expressly stated that they would not defer to the NLRB's rationale, and held arbitration agreements containing class waivers enforceable." <u>D.R. Horton</u>, 737 F.3d at 362 (citing <u>Richards v. Ernst & Young, LLP</u>, 734 F.3d 871, 873–74 (9th Cir. 2013); <u>Sutherland v. Ernst & Young LLP</u>, 726 F.3d 290, 297–98 n.8 (2d Cir. 2013); <u>Owen v. Bristol Care, Inc.</u>, 702 F.3d 1050, 1055 (8th Cir. 2013)).  However, that statement is a little misleading.  In <u>Richards</u>, the Court of Appeals for the Ninth Circuit amended its opinion and declined to decide whether to follow the board on the ground that the plaintiff had forfeited the argument.  <u>Richards v. Ernst & Young, LLP</u>, 11-17530, 2013 WL 6405045 (9th Cir. Dec. 9, 2013).  Although the other two courts declined to defer to the board, the Court of Appeals for the Second Circuit did not provide any reasoning for that decision.  <u>Sutherland</u>, 726 F.3d at 297 n.8. The only substantive reason the court gave in <u>Owen</u> for declining to follow the board was that the arbitration agreement at issue "does not preclude an employee from filing a complaint with an administrative agency such as the Department of Labor . . . , the Equal Employment Opportunity Commission, the NLRB, or any similar administrative body," and thus does not bar all "concerted action."  <u>Owen</u>, 702 F.3d at 1053-54.  However, the court did not explain why a statute that protects "concerted activities" *generally* should be construed to permit an employer to determine on its own which concerted activities are protected and which are not.

In sum, although the Court of Appeals for the Fifth Circuit made a number of valid points, particularly with respect to <u>Concepcion</u>, I am not persuaded that it requires vacation of this court's March 16, 2012 order.  First, the court of appeals' decision was not

unanimous.  Judge Graves dissented, agreeing with the board's conclusion that the class waivers violated the NLRA and that the board's interpretation of the NLRA did not conflict with the FAA.  <u>D.R. Horton</u>, 737 F.3d at 364-65, (Graves, J., concurring in part and dissenting in part).  Even the majority stated that it did "not deny the force of the Board's efforts to distinguish the NLRA from all other statutes that have been found to give way to requirements of arbitration."  <u>Id.</u> at 362.  Further, the majority never persuasively rebutted the board's conclusion that a collective litigation waiver violates the NLRA and never explained why, if there is tension between the NLRA and the FAA, it is the FAA that should trump the NLRA, rather than the reverse.  After all, the NLRA includes express language protecting the rights of employees to engage in concerted action whereas the FAA contains no language in the FAA prohibiting collective litigation.

Finally, regardless whether the court of appeals was correct about tension between the FAA and class actions, defendant's motion for reconsideration overlooks the limited scope of the March 16, 2012 order.  The provision at issue in the parties' arbitration agreement does not limit just class actions or collective actions.  Rather, it prohibits each employee from joining her claims with another employee. Dkt. #15-2, § 13, at 6. In the March 2012 order, I concluded that plaintiff "must be allowed to join other employees to her case," not that she must be allowed to certify a class action or a collective action.  Dkt. #57 at 18.  Because the concerns raised in <u>Concepcion</u> were about class litigation in particular, not multiple plaintiff suits generally, any tension between the March 2012 order and <u>Concepcion</u> is limited. <u>Concepcion</u>, 131 S. Ct. at 1751  ("[T]he switch from bilateral to *class* arbitration sacrifices

the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.") (emphasis added).  Although it is true that the arbitrator later ruled that plaintiff must be allowed to seek class certification (the arbitrator has yet to decide whether to actually certify a class), that goes beyond the scope of this court's March 2012 order, which is the only order that is the subject of defendant's motion.

Defendant cites the decisions of various district courts that declined to follow the board, but none of these decisions include reasoning that I have not considered already, so it is not necessary to discuss these cases separately.  Accordingly, I am denying defendant's motion for reconsideration.

One final matter deserves mention.  This case was filed more than two years ago, which is longer than it takes for most cases to be resolved in this court, and yet the parties remain stuck at a preliminary stage of the case.  Although I make no comment on the reasons for the delay, it is clear that the case has been languishing for far too long.  I anticipate that when the parties return to arbitration, they will make every effort to work with the arbitrator to set a schedule that will allow the remainder of the case to be resolved expeditiously.

ORDER

IT IS ORDERED that defendant Waterstone Mortgage Corporation's motions to

reopen the case and reconsider the court's March 16, 2012 order, dkt. ##82 and 83, are

DENIED.

     Entered this 28th day of January, 2014.

                              BY THE COURT:
                              /s/
                              BARBARA B. CRABB
                              District Judge