# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PAMELA HERRINGTON, both individually and behalf of all other similarly situated persons,<br><br>        Plaintiffs,<br><br>and<br><br>WATERSTONE MORTGAGE CORPORATION,<br>        Defendant. | Case No.: 3:11-cv-00779-bbc |

## DECLARATION OF ARI KAREN IN SUPPORT OF DEFENDANT WATERSTONE MORTGAGE CORPORATION'S OPPOSITION TO MOTION TO CONFIRM ARBITRATION AWARD

I, Ari Karen, declare under penalty of perjury that the following is true:

1. I am a principal in the law firm of Offit Kurman, co-counsel of record for Defendant Waterstone Mortgage Corporation ("Waterstone"). The following is true and based on my own personal knowledge. If called upon as a witness to testify, I could and would competently testify thereto.

2. In April 2011, during Plaintiff Pamela Herrington's ("Herrington") employment with Waterstone, Herrington and Waterstone entered a Waterstone Mortgage Corporation Loan Originator Employment Agreement, whereby the parties mutually agreed to arbitrate claims. The arbitration agreement between the parties expressly states that any arbitration "may not be joined with or join or include any claims by any persons not party to this Agreement." A true and correct copy of the Waterstone Mortgage Corporation Loan Originator Employment Agreement is attached as Exhibit 1 hereto.

3. After filing a demand for arbitration with the American Arbitration Association ("AAA"), the Honorable George C. Pratt was assigned as the Arbitrator. On August 2, 2013, Herrington moved for class certification.

4. *After* the close of discovery pertaining to class certification, but prior to ruling on the class certification motion, on November 6, 2013, the Arbitrator issued an interim Decision with Respect to Class Certification Motion in which he characterized Herrington's evidence in support of certification as "meager." In response, Herrington suggested that a questionnaire should be sent to all past and present Waterstone loan originators to allow them to obtain additional evidence needed to support certification. The Arbitrator approved the proposal, and asked the parties to agree on the form of a questionnaire. The Arbitrator stated the questionnaire should be "as simple as possible, should be neutrally worded, should be anonymous, and should

be made returnable directly to [the Arbitrator] for tabulation of results." In the meantime, the Arbitrator reserved judgment on Herrington's motion for class certification to allow for this additional evidence to be gathered. A true and correct copy of the Arbitrator's November 6, 2013 Decision with Respect to Class Certification Motion is attached as Exhibit 2 hereto.

5. On November 15, 2013, Herrington proposed a cover letter and questionnaire. The proposed cover letter to the questionnaire explained to current and former Waterstone loan originators there was a lawsuit in which the very same loan originators stood to recover potential unpaid minimum and overtime wages, as well as unreimbursed expenses:

> I am the Arbitrator presiding *over a lawsuit against Waterstone Mortgage Corporation (Waterstone) which has been referred to the American Arbitration Association to resolve. The lawsuit is brought by loan originators who claim that they were not paid overtime at the rate of time and one half for all of the hours they worked over 40 in a week, were not reimbursed for their business expenses, and were not paid the minimum wage.*

A true and correct copy of Herrington's November 15, 2013 Letter to Arbitrator Pratt, which encloses the draft letter and questionnaire, is attached as Exhibit 3 hereto.

6. Waterstone objected to the proposal because, *inter alia*, it would generate unreliable, inadmissible, and irrelevant information. A true and correct copy of Waterstone's November 19, 2013 Brief in Opposition to the Dissemination of a Pre-Certification Class Questionnaire and November 26, 2013 Reply to Claimants' Opposition to Brief in Opposition to the Dissemination of a Pre-Certification Class Questionnaire are attached hereto as Exhibits 4 and 5, respectively.

7. Waterstone proposed a different questionnaire that did not advise the recipients they were part of a lawsuit seeking unpaid wages and unreimbursed expenses and contained more specific questions about their claims. However, on November 29, 2013, the Arbitrator rejected Waterstone's objections and its proposed cover letter and questions, and instead adopted

2

Herrington's proposal with only minor revisions. A true and correct copy of the Arbitrator's November 29, 2013 Order Concerning Questionnaire is attached hereto as Exhibit 6.

8. The cover letter adopted by the Arbitrator informed the recipients it would be used for the class action wherein they stood to recover potential unpaid wages and expenses:

> *I am the Arbitrator presiding over a lawsuit against Waterstone Mortgage Corporation (Waterstone)* which has been referred to the American Arbitration Association to resolve. *The lawsuit is brought by loan originators who claim that they were not paid overtime at the rate of time and one half for all of the hours over 40 that they worked in a week, were not reimbursed for their business expenses, and were not paid the minimum wage*.

The questionnaire adopted by the Arbitrator contained seven questions, three of which were background questions about dates and locations of employment. The four remaining questions were:

> **4. To the best of your recollection, what were your average weekly work hours? (circle one only)**
> a. 40 or less hours a week
> b. 41 to 50 hours a week
> c. 51 to 60 hours a week
> d. Over 60 hours a week
>
> **5. If you answered that you worked 40 or less hours per week on average, were there weeks when you worked more than 40 hours a week?**
>
> Yes _____ No _____
>
> **6. Did you incur business expenses necessary to perform your work for which Waterstone failed to reimburse you? (Examples of business expenses you may have incurred for your work might include promotional events, office equipment, internet, cell phone, and business travel).**
>
> Yes _____ No _____
>
> **7. Did your supervisor ever tell you not to report all the hours that you worked?**
>
> Yes _____ No _____

A true and correct copy of the Arbitrator's approved cover letter and questionnaire is attached hereto as Exhibit 7.

9. After distributing the cover letter and questionnaire, on March 4, 2014, the Arbitrator granted Herrington's motion for class certification. In the ruling, the Arbitrator relied heavily on the questionnaire responses. The Arbitrator found that although the results "cannot be considered as proof that Waterstone has actually violated the FLSA," the "unsworn reports … raise a strong suggestion that Herrington's claim for overtime pay is not fanciful, frivolous, or confined to just a few of Waterstone's 'rogue' offices." The Arbitrator also found that based on the questionnaires, "[t]he occurrence of unreimbursed expenses" appeared "widespread." The Arbitrator concluded from the responses that (1) "substantial FLSA violations … are indicated to have occurred across a broad range of Waterstone's branch offices." Despite a lack of uniform responses, the Arbitrator found class certification was appropriate, and the arbitration proceeded on an opt-in basis. A true and correct copy of the Arbitrator's March 4, 2014 Class Certification Award is attached hereto as Exhibit 8.

10. Throughout the arbitration, the Arbitrator held several hearings. I attended an October 30, 2013 hearing in this matter. At that hearing, the Arbitrator stated that, as an arbitrator, his duty was not necessarily to follow the law *per se*, but rather to do what he thought was right and fair. The Arbitrator also joked regarding Claimants' request for additional class discovery it would allow him to continue to work on the case, which he found interesting, and that he would continue to get paid.

11. The Arbitrator held an evidentiary hearing on October 17, 19-21, and December 20-21, 2016. On October 17, 19, and 20, 2016, I attended the evidentiary hearing in this matter. During the hearing, I personally observed the Arbitrator sleeping on multiple occasions.

12. After hearing, on April 13, 2017, the Arbitrator issued a Partial Final Award on Liability. In that order, Arbitrator Pratt found in favor of Waterstone on Claimants' breach of contract and Wisconsin state law claims. The Arbitrator also found that Waterstone's loan originators were properly classified as exempt under the outside sales exemption. However, the Arbitrator found that Waterstone was liable for unpaid overtime, minimum wages, and unreimbursed expenses under the FLSA because Waterstone waived or was estopped from making its outside sales exemption arguments. A copy of the Arbitrator's April 13, 2017 Partial Final Award on Liability is attached as Exhibit 9.

13. On June 12, 2017, the Arbitrator issued a Decision and Partial Final Award on Damages. In that order, the Arbitrator awarded Claimants $7,267,919 in damages under the FLSA. A copy of the Arbitrator's June 12, 2017 Partial Final Award on Damages is attached as Exhibit 10.

14. On July 5, 2017, the Arbitrator issued a Decision and Partial Final Award on Attorney's Fees and Costs. In that order, the Arbitrator awarded attorney's fees and costs of $3,298,851, and awarded Claimant Pamela Herrington ("Herrington") an incentive award of $20,000. A copy of the Arbitrator's July 5, 2017 Decision and Partial Final Award on Attorney's Fees and Costs is attached as Exhibit 11.

15. On July 5, 2017, the Arbitrator issued a Final Award summarizing the above Partial Final Awards. On Page 2 of the Final Award, the Arbitrator awarded attorney's fees, costs, and incentive fees as follows:

| Lodestar | $2,667,602 |
| Multiplier enhancement (20%) | $ 533,520 |
| Costs | $ 97,729 |
| Incentive fee | $ 20,000 |
| Total | $3,318,851" |

Then, on the following page, in the itemization of the awarded, the Arbitrator awarded the same $20,000 incentive fee to Herrington twice:

> Accordingly, it is determined as a Final Award in this Arbitration that
>
> 3. Claimants shall recover from Waterstone Mortgage Corporation the sum of $3,318,851.00 as attorney's fees and costs, to be paid to Getman, Sweeney & Dunn, PLCC.
> 4. Claimants shall recover from Waterstone Mortgage Corporation the sum of $20,000 as an incentive fee, to be paid to Claimant Pamela Herrington.

The $20,000 was part of the total $3,318,851 in attorney's fees, costs, and incentive fees. The Arbitrator awarded it again as a separate $20,000 incentive fee. A true and correct copy of the Arbitrator's July 5, 2017 Final Award is attached hereto as Exhibit 12.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 25th day of July 2017, at Bethesda, Maryland.

/s/ Ari Karen
Ari Karen