IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **PAMELA HERRINGTON, both individually and behalf of all other similarly situated persons,**<br><br>        **Plaintiffs,**<br><br>**and**<br><br>**WATERSTONE MORTGAGE CORPORATION,**<br>        **Defendant.** | Case No.: 3:11-cv-00779-bbc |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD, OR, IN THE ALTERNATIVE, TO MODIFY THE AWARD</u>

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. *et seq.*, Defendant Waterstone Mortgage Corporation ("Waterstone") moves to vacate or, in the alternative, to modify the arbitration award issued against it on July 5, 2017.

**I. INTRODUCTION**

An arbitrator must "provide a fundamentally fair hearing." *Generica Ltd. v. Pharmaceutical Basics, Inc.,* 125 F.3d 1123, 1130 (7th Cir.1997); *accord Int'l Union of Bricklayers & Allied Craftworkers Dist. Council of Wisc. v. Middleton Const., Inc.*, No. 99-C-0433-C, 2000 WL 34228199, at *4 (W.D. Wis. Sept. 20, 2000) (Crabb, J.). Such a ruling must meet "the minimal requirements of fairness," including an impartial hearing on the evidence and impartial decision by the arbitrator. *Generica Ltd.,* 125 F.3d at 1130 (internal citations omitted).

Waterstone was not afforded these minimal requirements in its arbitration with Plaintiff Pamela Herrington ("Herrington"). Under the FAA, an arbitrator's award should be vacated where there was "evident partiality" or bias, where the arbitrator committed "misconduct," or where the arbitrator acted in "manifest disregard of the law." 9 U.S.C. § 10(a); *Wise v. Wachovia*

1

*Secs., LLC,* 450 F.3d 265, 268 (7th Cir. 2006). All of these factors exist here and they justify vacating the 'arbitration award.

<u>First</u>, the Arbitrator demonstrated bias and partiality by creating and issuing a flawed questionnaire to putative class members to bolster Herrington's "meager" showing to support certification. In contravention of well-established law, it contained a cover letter advising the loan originators they were part of a putative class action lawsuit and stood to recover unpaid wages and unreimbursed expenses depending on their survey responses. It then contained short, overly simplistic, "yes" or "no" questions—the same binary questions rejected in wage-and-hour class action questionnaires. Unsurprisingly, in response to the biased survey, Herrington obtained information saving her class certification motion. By creating this unlawful survey and then distributing it, the Arbitrator demonstrated manifest bias against Waterstone, acted in clear disregard of established law, and manufactured the evidence lacking in Herrington's class certification briefing.

<u>Second</u>, after certifying a class of loan originators, the Arbitrator slept during multiple portions of the arbitration. He was observed by numerous individuals sleeping during key portions of the arbitration, including the direct and cross examination of Claimants, whose claims and credibility were at issue. A sleeping judge is effectively an absent judge. When facing similar issues, both state and federal courts have found that "structural error" exists when a judge is asleep or absent during portions of trial. As stated succinctly in *State v. Johnson*, 53 Kan. App. 2d 734, 741–42 (2017), "***there can be no court without a judge. How can the public have confidence in the outcome of a trial if the trial judge is napping?***" The same is true here. The Arbitrator committed misconduct in sleeping during portions of the arbitration. Given the multi-

million dollar award issued against Waterstone, the Arbitrator's inability to be attentive to testimony severely prejudiced Waterstone.

Third, the Arbitrator made a clear mathematical error in his award. District courts refuse to enforce awards found to be contradictory or ambiguous because such awards cannot be considered "mutual, final, and definite." 9 U.S.C. § 10(a)(4). A district court should modify or correct an award where there is "an evident material miscalculation of figures" giving rise to it. 9 U.S.C. § 11(a). When a claimant is awarded double recovery, under binding Seventh Circuit law, that is a "materially unjust miscalculation" subject to modification. *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994). The Arbitrator violated this rule and awarded double recovery to Herrington because it awarded $3,318,851 in attorney' fees, costs, and *incentive fees* against Waterstone, but then awarded an additional $20,000 in *incentive fees* to Herrington *already included* in the $3,318,851 amount. Given the facial mathematical error, the Arbitrator's award was contradictory, and at the very least must be modified so as not to award double recovery against Waterstone.

For these reasons, and those that follow, Waterstone respectfully requests that the Court (1) vacate the Arbitrator's award in its entirety, or, in the alternative, (2) modify the award to reflect the mathematically correct amount of damages and fees and costs, without awarding double recovery to Herrington.

## II. FACTUAL BACKGROUND

### A. This Court Compelled Arbitration of Herrington's Claims, But Invalidated The Class and Collective Action Waiver In Her Arbitration Agreement.

Plaintiff is a former Waterstone loan originator. She filed this lawsuit as a putative class action on November 28, 2011. (ECF 3.) On behalf of herself and other loan originators,

Herrington sought unpaid wages under the Fair Labor Standards Act ("FLSA") and state law. (*Id.*)

During her employment, Herrington and Waterstone entered an employment agreement that included a mutual agreement to arbitrate claims. The arbitration agreement expressly states that any arbitration "may not be joined with or join or include any claims by any persons not party to this Agreement." (Decl. of Ari Karen ["Karen Decl."] ¶ 2, Ex. 1 at p. 6, Waterstone Mortgage Corporation Loan Originator Employment Agreement.)

Waterstone moved to dismiss Herrington's complaint or, in the alternative, to compel arbitration under the binding arbitration agreement. (ECF 13.) On March 16, 2012, the Court granted the motion to compel in part. (ECF 57.) The Court found that Herrington's claims must be resolved in arbitration. However, the Court found that the class or collective action waiver in Herrington's arbitration agreement with Waterstone was invalid because it violated the National Labor Relations Act ("NLRA"). (*Id.* at pp. 7-14.) The Court ordered arbitration of Herrington's dispute, but found she should "be allowed to join other employees to her case." (*Id.* at p. 18.) The Court administratively closed the matter and stayed it pending completion of arbitration. (*Id.*)

**B.** **The Arbitrator Found that Herrington Had "Meager" Evidence Supporting Certification, But Nevertheless Certified a Class of Loan Originators After Allowing Putative Class Members to Complete a Questionnaire Advising Them They Stood to Recover Based on Their Responses.**

After filing a demand for arbitration with the American Arbitration Association, the Honorable George C. Pratt was assigned as the Arbitrator. On August 2, 2013, Herrington moved for class certification. (Karen Decl. ¶ 3.)

*After* the close of discovery pertaining to class certification, but prior to ruling on the class certification motion, the Arbitrator issued an interim Decision with Respect to Class Certification Motion in which he characterized Herrington's evidence in support of certification

4

as "meager." (Karen Decl. ¶ 4, Ex. 2 at p. 3, November 6, 2013 Decision with Respect to Class Certification Motion.) In response, Herrington suggested that a questionnaire should be sent to all past and present Waterstone loan originators to allow them to obtain the evidence needed to support certification. (*Id.* at p. 4.) The Arbitrator approved the proposal, and asked the parties to agree on the form of a questionnaire. The Arbitrator stated the questionnaire should be "as simple as possible, should be neutrally worded, should be anonymous, and should be made returnable directly to [the Arbitrator] for tabulation of results." (*Id.* at p. 5.) In the meantime, the Arbitrator reserved judgment on Herrington's "meager" showing regarding certification to allow for this additional evidence to be gathered. (*Id.*)

On November 15, 2013, Herrington proposed a flawed cover letter and questionnaire. (Karen Decl. ¶ 5, Ex. 3, November 15, 2013 Letter to Arbitrator Pratt.) The proposed cover letter to the questionnaire explained to current and former Waterstone loan originators there was a lawsuit in which the very same loan originators sought to recover potential unpaid minimum and overtime wages, as well as unreimbursed expenses:

> I am the Arbitrator presiding ***over a lawsuit against Waterstone Mortgage Corporation (Waterstone) which has been referred to the American Arbitration Association to resolve. The lawsuit is brought by loan originators who claim that they were not paid overtime at the rate of time and one half for all of the hours they worked over 40 in a week, were not reimbursed for their business expenses, and were not paid the minimum wage.***

(*Id.*, Ex. 3 at p. 5 [emphasis supplied].)

Waterstone vigorously objected to the proposal because, *inter alia*, it would generate unreliable, inadmissible, and irrelevant information. (Karen Decl. ¶ 6, Ex. 4, November 19, 2013 Brief in Opposition to the Dissemination of a Pre-Certification Class Questionnaire, Ex. 5, November 26, 2013 Reply to Claimants' Opposition to Brief in Opposition to the Dissemination of a Pre-Certification Class Questionnaire.) It instead proposed a different questionnaire that did

5

not advise the recipients they stood to recover in a class action lawsuit based on their responses and contained more nuanced, less binary questions. (Karen Decl. ¶ 7.) Despite Waterstone's well-founded objections, the Arbitrator rejected Waterstone's objections and its proposed cover letter and questions, and instead adopted Herrington's proposal with only minor revisions. (*Id.*, Ex. 6, November 29, 2013 Order Concerning Questionnaire.) The cover letter informed the recipients it would be used for the class action wherein they stood to recover potential unpaid wages and expense – in other words, it encouraged them to respond favorably:

> *I am the Arbitrator presiding over a lawsuit against Waterstone Mortgage Corporation (Waterstone)* which has been referred to the American Arbitration Association to resolve. ***The lawsuit is brought by loan originators who claim that they were not paid overtime at the rate of time and one half for all of the hours over 40 that they worked in a week, were not reimbursed for their business expenses, and were not paid the minimum wage***.

(Karen Decl. ¶ 8, Ex. 7, Final Cover Letter and Questionnaire [emphasis supplied].)

The questionnaire contained seven questions, three of which were background questions about dates and locations of employment. The four remaining questions were:

**4. To the best of your recollection, what were your average weekly work hours? (circle one only)**
a. 40 or less hours a week
b. 41 to 50 hours a week
c. 51 to 60 hours a week
d. Over 60 hours a week

**5. If you answered that you worked 40 or less hours per week on average, were there weeks when you worked more than 40 hours a week?**

Yes _____ No _____

**6. Did you incur business expenses necessary to perform your work for which Waterstone failed to reimburse you? (Examples of business expenses you may have incurred for your work might include promotional events, office equipment, internet, cell phone, and business travel).**

Yes _____ No _____

**7. Did your supervisor ever tell you not to report all the hours that you worked?**

Yes _____ No _____

(Karen Decl. ¶ 8, Ex. 7, Final Cover Letter and Questionnaire.)

Apart from a multiple choice question about hours worked, the questions, contained only binary, "yes" or "no" options to questions about hours worked and unreimbursed business expenses.[1] (*See* Karen Decl. ¶ 8, Ex. 7.)

After distributing the cover letter and questionnaire, the Arbitrator granted Herrington's motion for class certification. (Karen Decl. ¶ 9, Ex. 8, March 4, 2014 Class Certification Award.) In the ruling, the Arbitrator relied heavily on the questionnaire responses. The Arbitrator found that although the results "cannot be considered as proof that Waterstone has actually violated the FLSA," the "unsworn reports … raise a strong suggestion that Herrington's claim for overtime pay is not fanciful, frivolous, or confined to just a few of Waterstone's 'rogue' offices." (*Id.* at p. 7.) The Arbitrator also found that based on the questionnaires, "[t]he occurrence of unreimbursed expenses" appeared "widespread." (*Id.*) The Arbitrator concluded from the responses that (1) "substantial FLSA violations … are indicated to have occurred across a broad range of Waterstone's branch offices." (*Id.*) Despite a lack of uniform responses, the Arbitrator found class arbitration was appropriate and the arbitration proceeded on an opt-in basis. (*Id.* at pp. 7, 15.)

### C. During Hearings, The Arbitrator Made Multiple Comments About His Findings Being Effectively Unreviewable

Throughout the arbitration, the Arbitrator held several hearings. During the hearings, the Arbitrator made multiple comments about his authority as an arbitrator. On October 19, 2016,

---

[1] The Arbitrator only added the seventh question asking if the recipient's supervisor ever told the recipient not to report all hours worked. (Karen Decl. ¶ 7, Ex. 6 at p. 2.)

the Arbitrator commented that being an arbitrator was better than being a federal judge because it was harder for his decisions to be overturned. (Declaration of Kevin Allen ["Allen Decl."] ¶ 3.) On an October 30, 2013 hearing, the Arbitrator stated that, as an arbitrator, his duty was not necessarily to follow the law, *per se*, but to do what he thought was right and fair. (Karen Decl. ¶ 10.) The Arbitrator also joked regarding Claimants' request for additional class discovery that it would allow him to continue to work on the case, which he found interesting, and that he would continue to get paid. (*Id.*)

### D. After Certifying a Class, The Arbitrator Slept Through Portions of Trial

The Arbitrator held an evidentiary hearing on October 17, 19-21, and December 20-21, 2016. On October 17, 19, and 20, the Arbitrator repeatedly slept through key portions of testimony. (Karen Decl. ¶ 11; Declaration of Stephanie Ziebell ["Ziebell Decl."] ¶ 3; Declaration of Eric Egenhoefer ["Egenhoefer Decl."] ¶ 3, Ex. A.) He slept through both the direct and cross-examination testimony of Claimants. (Ziebell Decl. ¶ 3.) There are photographs showing the Arbitrator sleeping. (Egenhoefer Decl. ¶ 3, Ex. A.)

### E. The Arbitrator Issued a Final Award That Was Confusing and Mathematically Incorrect

On April 13, 2017, the Arbitrator issued a Partial Final Award on Liability. In that order, the Arbitrator found in favor of Waterstone on Claimants' breach of contract and Wisconsin state law claims. (Karen Decl. ¶ 12, Ex. 9 at pp. 23-26, April 13, 2017 Partial Final Award on Liability.) The Arbitrator also found that Waterstone's loan originators were properly classified as exempt under the outside sales exemption. (*Id.*, Ex. 9 at p. 20.) However, the Arbitrator found that Waterstone was liable for unpaid overtime, minimum wages, and unreimbursed expenses under the FLSA because Waterstone waived or was estopped from making its outside sales exemption arguments. (*Id.,* Ex. 9 at pp. 20-23.)

On June 12, 2017, the Arbitrator issued a Decision and Partial Final Award on Damages. In that order, the Arbitrator awarded Claimants $7,267,919 in damages under the FLSA. (Karen Decl. ¶ 13, Ex. 10 at p. 5, June 12, 2017 Decision and Partial Final Award on Damages.) On July 5, 2017, the Arbitrator issued a Decision and Partial Final Award on Attorney's Fees and Costs. In that order, the Arbitrator awarded attorney' fees and costs of $3,298,851, and awarded Herrington an incentive award of $20,000. (Karen Decl. ¶ 14, Ex. 11 at pp. 9-10, July 5, 2017 Decision and Partial Final Award on Attorney's Fees and Costs.)

On July 5, 2017, the Arbitrator issued a Final Award summarizing the above Partial Final Awards. (Karen Decl. ¶ 15, Ex. 12, July 5, 2017 Final Award.) However, in the Final Award, the Arbitrator got the math wrong and awarded Herrington incentive fees twice. On page two of the Final Award, the Arbitrator awarded attorney' fees, costs, and incentive fees as follows:

| | |
|---|---|
| Lodestar | $2,667,602 |
| Multiplier enhancement (20%) | $ 533,520 |
| Costs | $ 97,729 |
| Incentive fee | $ 20,000 |
| Total | $3,318,851" |

(Karen Decl. ¶ 15, Ex. 12 at p. 2.)

Then, on the following page, in the itemization of the award, the Arbitrator awarded the $20,000 incentive fee to Herrington again:

> Accordingly, it is determined as a Final Award in this Arbitration that
>
> 3. Claimants shall recover from Waterstone Mortgage Corporation the sum of $3,318,851.00 as attorney's fees and costs, to be paid to Getman, Sweeney & Dunn, PLCC.
> 4. Claimants shall recover from Waterstone Mortgage Corporation the sum of $20,000 as an incentive fee, to be paid to Claimant Pamela Herrington.

9

The $20,000 was part of the total $3,318,851 in attorney' fees, costs, and incentive fees. The Arbitrator awarded it twice; once as part of this $3,318,851 figure, and again as a separate $20,000 incentive fee. (Karen Decl. ¶ 15, Ex. 12 at pp. 2-3.)

## III. LEGAL STANDARD

Section 10 of the FAA permits a court to vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Besides the four reasons in 9 U.S.C. § 10, a court may also "set aside arbitration awards that are in 'manifest disregard of the law.'" *Wise v. Wachovia Secs., LLC,* 450 F.3d 265, 268 (7th Cir. 2006). The Seventh Circuit has defined the term "manifest disregard of the law" to mean where an arbitrator "exceeded their powers" by directing the parties to violate the law. *Id.*; *Renard v. Ameriprise Fin. Servs. Inc.*, 778 F.3d 563, 567-68 (7th Cir. 2015).

While judicial review under the FAA is limited, "[j]udicial deference to arbitration … is not unlimited." *U.S. Soccer Fed'n, Inc. v. U.S. Nat. Soccer Team Players Ass'n*, 838 F.3d 826, 832 (7th Cir. 2016). "It is clear than an arbitrator must provide a fundamentally fair hearing." *Generica Ltd. v. Pharmaceutical Basics, Inc.,* 125 F.3d 1123, 1130 (7th Cir.1997); *accord Int'l Union of Bricklayers & Allied Craftworkers Dist. Council of Wisc. v. Middleton Const., Inc.*, No.

99-C-0433-C, 2000 WL 34228199, at *4 (W.D. Wis. Sept. 20, 2000) (Crabb, J.). A fair hearing is one that "meets the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Generica Ltd.,* 125 F.3d at 1130 (internal citations omitted).

Besides vacating an award, the district court "may make an order modifying or correcting the award upon the application of any party to the arbitration … (a) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a).

"Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Waterstone timely makes this motion. The Arbitrator issued his award on July 5, 2017,

## IV. THE ARBITRATOR'S AWARD SHOULD BE VACATED BECAUSE THE ARBITRATOR AND CLAIMANTS' COUNSEL CONDUCTED A BIASED SURVEY BECAUSE THEY WANTED TO CERTIFY A CLASS

Under the FAA's framework, an award may be vacated for "bias" if the arbitrator's conduct shows the "evident partiality" of the arbitrator, or the "reasonable appearance of such partiality." *Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d 1196, 1200 (7th Cir. 1980). As noted above, an arbitrator may not act in manifest disregard of the law by directing the parties to violate it. *Wise,* 450 F.3d at 268. The Arbitrator violated both of these rules. The Arbitrator's questionnaire had the practical effect of being a direction to violate the law. The content of the questionnaire, and the procedural posture from which it emerged, is strong evidence of bias for sustaining Claimants' FLSA claims.

To be admissible, survey data must have "circumstantial guarantees of trustworthiness," and admitting the survey must "best serve the purposes of [the rules of evidence] and the

11

interests of justice." Fed. R. Evid. 807; *see also Pittsburgh Press Club v. United States*, 579 F.2d 751, 757 (3d Cir. 1978). Substantial deficiencies in the design or execution of a survey are grounds for the complete exclusion of it. *Pittsburgh Press*, 579 F.2d at 759-60; *Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1067 (C.D. Cal. 2002). One such deficiency is where the survey asks overly simplistic questions not designed by an expert and provide for binary, "yes" or "no" answers. *Sirko v. Int'l Bus. Machines Corp.*, No. CV 13-03192 DMG SSX, 2014 WL 4452699, at *4 (C.D. Cal., Sept. 3, 2014) (noting that questions only allowing for binary responses show a "lack of expertise"). Another more important deficiency is where "the recipients of the survey [are] informed of the purpose of the survey and reminded that they were the beneficiaries" of it. *Gibson*, 181 F. Supp. 2d at 1067; *id.* at *4. That is the *exact basis* justifying exclusion of survey results in numerous cases, including one of the seminal appellate cases on this issue, *Pittsburgh Press*. There, the Third Circuit found that a cover letter informing recipients of the questionnaire's purpose in litigation undermined the reliability of the survey's results. *Pittsburgh Press*, 579 F.2d at 759-60. The court explained that because the recipients "were expressly advised about the nature of the litigation," they knew which answers would benefit them, which was improper. *Id.* Thus, the court rejected the survey.

District courts—including those within the Seventh Circuit—have repeatedly followed this rule in rejecting survey results where the recipient was informed of the litigation giving rise to the survey and knew that his or her responses could be helpful to them. *See, e.g., United States v. So. Ind. Gas & Elec. Co.*, 258 F. Supp. 2d 884, 893-895 (S.D. Ind. 2003) (excluding survey results under *Pittsburgh Press* because interested respondents knew they could be harmed/benefitted by survey and "were informed the survey was connected to litigation"); *Gibson*, 181 F. Supp. 2d at 1067-69 (rejecting survey where recipients had a "vested interest" in

results and "were informed before filling out the survey that responding … could help in this effort.") Applying these rules, in the wage-and-hour class certification context, courts have rejected survey results where they "lack[ed] basic indicators of reliability." *Sirko*, 2014 WL 4452699, at *4. In *Sirko,* the court found a survey lacked "essential hallmarks of reliability" where it was drafted heavily by plaintiffs' counsel, required only yes or no responses, and "informed recipients that the purpose of the survey was to support a class action seeking overtime wages for employees who had been misclassified as exempt." *Id.* The court explained that given these misgivings "[t]he survey recipients had to have been aware they would be potential beneficiaries of such a lawsuit. This undermines any possible inference that the survey responses were objective." *Id.* It thus found the survey inadmissible. *Id.*

The facts here are far more egregious than the above cases. The survey, as adopted in a form nearly identical to that proposed by Herrington's counsel, began by specifically informing putative class members of the very nature of the lawsuit. It told the loan originators it was sent to that the very same "loan originators" were part of a lawsuit where they stood to recover on claims "that they were not paid overtime," minimum wages, and were not reimbursed for business expenses. (Karen Decl. ¶ 8, Ex. 7.) The survey recipients were made aware they would be potential beneficiaries of such a lawsuit, so there was a response bias much like the bias that existed in all of the above cases. The procedural history from which the questionnaire arose is further indicative of bias and partiality. The Arbitrator only ordered the questionnaire *after* discovery pertaining to certification was closed, the issue of certification was fully briefed, and the Arbitrator found that Herrington made a "meager" showing to support class claims. (Karen Decl. ¶ 4, Ex. 2 at p. 3.) By ordering the survey, the Arbitrator created the evidence needed to certify the class, worked with Claimants' counsel to draft the flawed survey, and then granted

13

certification based on the results of the survey. These are strong indicators of bias and partiality in favor of Herrington's class claims, which form a basis for vacating an award. 9 U.S.C. § 10(2); *Tamari*, 619 F.2d at 1200.

The design of the survey further bears out its impropriety. By ordering that the questionnaire be designed by the parties and be as simple as possible, the Arbitrator effectively directed the parties to violate the law by ignoring fundamental concepts of survey creation. Karen Decl. ¶ 4, Ex. 2; *Sirko*, 2014 WL 4452699, at *4 (noting that questions drafted by parties and non-experts, and only allowing for binary responses show a "lack of expertise"). Under Seventh Circuit authority, an arbitrator acts in "manifest disregard of the law" when he or she directs the parties to violate the law, and this is grounds for vacating an award. *Wise,* 450 F.3d at 268. The Arbitrator compounded this problem when it directed the parties—over Waterstone's objection—to prepare a cover letter advising recipients of their potential right to recover under the lawsuit. *Id.*; Karen Decl. ¶¶ 4-8, Exs. 2-7. That direction again violated well-established law.

Over Waterstone's proposed revisions to make the cover letter more neutral, the Arbitrator and Claimants' counsel got precisely the information they wanted—self-serving evidence that would support their goal of certifying the class. The Arbitrator's conduct regarding the questionnaire shows bias and a failure to follow applicable law. This is true when viewed with comments the Arbitrator made throughout arbitration. The Arbitrator boasted that he did not have to follow the law, that his decisions could not be easily overturned, and that additional class discovery would allow him to continue to work on the case and get paid. (Allen Decl. ¶ 3; Karen Decl. ¶ 9.) True to his word, the Arbitrator's survey extended the life of this case, while disregarding the law. The Arbitrator relied heavily on the questionnaire results in his certification order, which prejudiced Waterstone and in turn, led to a finding of class liability, damages, and

fees against it. (Karen Decl. ¶ 9, Ex. 8 at p. 7.) The inappropriate survey turned this case from a case with "meager" evidence supporting certification, to a proceeding with well over 200 claimants and company-wide liability. This alone warrants vacating the Arbitrator's award.

V. **THE ARBITRATOR'S AWARD SHOULD BE VACATED BECAUSE THE ARBITRATOR COMMITTED MISCONDUCT BY SLEEPING DURING ARBITRATION**

In addition to the above issues, the Arbitrator engaged in misconduct by sleeping during arbitration. Under federal law, "sleeping during trial by a juror constitutes misconduct." *Jackson v. A-C Prod. Liab. Trust*, 622 F. Supp. 2d 641, 648 (N.D. Ohio 2009) (citing *United States v. Sherrill*, 388 F.3d 535, 537 (6th Cir. 2004). The same should hold true for judges.

Most recently, the Kansas Court of Appeals found that "structural error" existed when the trial judge slept during portions of trial.[2] The court wrote:

> *[T[here can be no court without a judge. How can the public have confidence in the outcome of a trial if the trial judge is napping*? This is not an error in the presentation of evidence, nor is it an error in the instruction of the jury, nor is it like other trial issues where we examine them to see if they are harmless. ***This error affected the framework of the entire trial. Our citizens expect a fully awake trial judge presiding over a criminal trial. This was structural error***.

*State v. Johnson*, 53 Kan. App. 2d 734, 741–42 (2017) (emphasis supplied).

"Structural errors are so intrinsically harmful that automatic reversal is required without regard to existence of effect on outcome." *Johnson*, 53 Kan. App. 2d at 736. Because there was a structural error, the *Johnson* court found this alone justified a new trial, without requiring any independent showing of prejudice or harmful error. *Id.*

Federal courts have also suggested that where a finder of fact falls asleep during testimony, it may be a basis for reversal if somnolence caused prejudice to parties. *See, e.g., United States. v. Barrios*, 210 F. 3d 355 2000 WL 419940, at *2 (2d Cir. 2000) (table)

---

[2] The amount of time the just slept or nodded off during trial was "unknown." *Johnson*, 53 Kan. App. 3d at 741.

15

(suggesting that judge's falling asleep during trial may be a basis for reversal if it prejudices a party). Under analogous authority, federal courts have also found "structural error" when a judge is absent or missing from the court room. *See, e.g., United States v. Mortimer*, 161 F.3d 240, 241-42 (3d Cir. 1998); *People v. Vargas*, 174 Ill. 2d 355, 366-67 (1996) (finding reversible error when a judge left the bench during a portion of witness examination). As explained by the Third Circuit:

> A trial consists of a contest between litigants before a judge. When a judge is absent at a 'critical stage' the forum is destroyed. *Gomez v. United States*, 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). There is no trial. The structure has been removed. There is no way of repairing it. The framework 'within which the trial proceeds' has been eliminated. See *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The verdict is a nullity. *Gomez*, 490 U.S. at 876, 109 S.Ct. 2237 (1989).

*Mortimer*, 161 F.3d at 241.

The Third Circuit explained that, given this structural error, no showing of prejudice to the party was required. Instead, the "structural defect" of the judge's absence alone "determine[d] the result," which was there needed to be a new trial. *Id.* at 242.

A sleeping judge is an absent judge. *See State v. Johnson*, 53 Kan. App. 2d at 739-40 (analogizing issues of sleeping with absence). According to the Code of Conduct for U.S. Judges, Canon 2(A), "[a] judge … should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." *See also Sleeping judges rare but not unheard of, experts say*, Chicago Trib. (Sept. 15, 2015), *available at* http://www.chicagotribune.com/suburbs/post-tribune/news/ct-ptb-soderquist-judge-reaction-st-0927-20150925-story.html (Indiana University Law School professor Charles Geyh noted that judges sleeping through testimony is "never good, it's not a good idea, and it does raise ethical implications"); *The Case of "Judge Nodd" and other Sleeping Judges—Media, Society, and Judicial Sleepiness*, Ronald R Grunstein, *available at*

http://online.wsj.com/public/resources/documents/judicialsleepiness.pdf (study of 15 cases of judicial sleepiness found that ten cases resulted in retrials and five cases forced judges from the bench). Here, the Arbitrator repeatedly engaged in misconduct by sleeping through key portions of testimony throughout arbitration. (Karen Decl. ¶ 10; Egenhoefer Decl. ¶ 3, Ex. A; Ziebell Decl. ¶ 3.) During the direct and cross examination testimony of key loan originator witnesses, the Arbitrator was observed sleeping on multiple occasions. (Ziebell Decl. ¶ 3.) There is photographic evidence of this misconduct. (Egenhoefer Decl. ¶ 3, Ex. A.)

Under the above authority, the Arbitrator's conduct constitutes misconduct by the Arbitrator, which alone warrants vacating the award under 9 U.S.C. § 10(a)(3). It undermines the integrity of the arbitration, and also constitutes a structural error affecting the proceedings. Courts have held that structural error mandates reversal and/or a new trial, and Waterstone submits it warrants vacating the award here.

Not only was the Arbitrator's conduct structural error, it severely prejudiced Waterstone. There was no jury in this arbitration. The Arbitrator was the finder of fact, solely responsible for weighing the credibility of witnesses and issuing a ruling on all factual and legal disputes. He could not do this when he was asleep. Even in arbitration, every party "has a right to a fundamentally fair hearing." *Generica Ltd.,* 125 F.3d at 1130. This includes the right to a hearing on the evidence and an impartial decision by the arbitrator. When the Arbitrator slept through the hearing, he deprived Waterstone of this fundamental right because the Arbitrator simply missed key testimony, the opportunity to weigh witness credibility, and then ultimately ruled against Waterstone. The Arbitrator's misconduct thus provides a second independent ground for vacating the award.

///

## VI. THE ARBITRATOR'S AWARD SHOULD BE VACATED OR AT THE VERY LEAST BE MODIFIED BECAUSE IT CONTAINS FACIAL ERRORS AND AWARDS DOUBLE RECOVERY TO CLAIMANTS

District courts refuse to enforce awards found to be contradictory or ambiguous because such awards cannot be considered "mutual, final, and definite." 9 U.S.C. § 10(a)(4); *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir. 1985) ("Courts will not enforce an award that is incomplete, ambiguous, or contradictory."); *Dworkin-Cosell Interair Courier Servs., Inc. v. Avraham*, 728 F. Supp. 156, 161-62 (S.D.N.Y. 1989) (same). Where an award is not vacated, the district court should modify or correct an award where there is "an evident material miscalculation of figures" giving rise to it. 9 U.S.C. § 11(a). Under Seventh Circuit authority, "[d]ouble recovery constitutes a materially unjust miscalculation which may be modified under section 11 of the Federal Arbitration Act." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994); *see also Mical v. Glick*, 2014 WL 322093, at *3 (N.D. Ill. Jan. 28, 2014). Thus, "[w]hen an arbitration award orders a party to pay damages that have already been paid or which are included elsewhere in the award, a court may modify the award." *Eljer Mfg.*, 14 F.3d at 1254.

Here, the Arbitrator's award is contradictory and ambiguous because it awards inconsistent damages. On page two, the Arbitrator awarded $3,318,851 in attorney fees, costs, and incentive fees against Waterstone. (Karen Decl. ¶ 15, Ex. 12 at p. 2.) However, on the next page, he awarded $3,318,851 in attorney fees and costs, *plus* an additional $20,000 in incentive fees already included in the $3,318,851 figure. (*Id.*, Ex. 12 at p. 3.) Simply put, the Arbitrator awarded $20,000 too much in his Final Award.[3]

---

[3] This fact is clear when one compares the Final Award to the Court's July 5, 2017 Decision and Partial Final Award on Attorney's Fees and Costs. In that Partial Final Award on Attorney's Fees

At the very least, the award contains a facial mathematical error that overcharges Waterstone in the amount of $20,000. This Court cannot sanction that type of double recovery. This alone warrants modification of the Arbitrator's award. 9 U.S.C. § 11(a); *Eljer Mfg.*, 14 F.3d at 1254. The award should only award $3,318,851 in attorney fees, costs, and incentive fees, and should not award an additional $20,000 in incentive fees on top of this amount.

**VII.  CONCLUSION**

For the foregoing reasons, Waterstone respectfully requests that the Court (1) vacate the Arbitrator's award in its entirety, or alternatively (2) modify the award to reflect the mathematically correct amount of damages and fees and costs.

DATED:  July 25, 2017

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Spencer C. Skeen*
    Spencer C. Skeen
    Tim L. Johnson
    Jesse C. Ferrantella
    Attorneys for Defendant WATERSTONE MORTGAGE CORPORATION

---

and Costs, the Arbitrator awarded a total of $3,318,851 in attorney's fees, costs, and incentive fees. (Karen Decl. ¶ 14, Ex. 11 at p. 9.)