## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

**PAMELA HERRINGTON, both individually and behalf of all other similarly situated persons,**

                              **Plaintiffs,**

**and**

**WATERSTONE MORTGAGE CORPORATION,**

                              **Defendant.**

**Case No.: 3:11-cv-00779-bbc**

## REPLY IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD, OR, IN THE ALTERNATIVE, TO MODIFY THE AWARD

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................... 1

II.    WATERSTONE PROPERLY STATED THE STANDARD OF REVIEW ................ 3

III.   THE ARBITRATOR'S CONDUCT EVIDENCES BIAS OR PARTIALITY
       AGAINST WATERSTONE ............................................................................. 4

   A.  The Facts Surrounding Implementation of the Questionnaire Show More Than Mere
       Legal Error, But Evidence Bias.................................................................... 8

   B.  The Arbitrator's Questionnaire and Resulting Certification Ruling Changed The
       Entire Course of Litigation and Strongly Prejudiced Waterstone............................ 10

IV.    WATERSTONE'S EVIDENCE ESTABLISHES THE ARBITRATOR WAS
       SLEEPING DURING ARBITRATION, WHICH CONSTITUTES
       MISCONDUCT ......................................................................................... 11

   A.  Waterstone Submitted Sworn Testimony and Photographic Evidence of the
       Arbitrator Sleeping.................................................................................... 11

   B.  The Arbitrator's Sleeping During Testimony Constitutes Misconduct That Justifies
       Vacating The Award................................................................................... 13

   C.  Waterstone Did Not Waive Any Argument Regarding Sleeping ............................... 16

V.     HERRINGTON ADMITS THE ARBITRATOR'S AWARD RESULTED IN
       DOUBLE COUNTING, YET ASKED THE COURT TO CONFIRM THIS
       ERRONEOUS AWARD AND HAS NOT CORRECTED ITS MOTION WITH THE
       COURT................................................................................................... 17

VI.    CONCLUSION ......................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. One Beacon American Ins. Co.*,
    989 F. Supp. 2d 143 (D. Mass. 2013) ...................................................................11

*Artesian Water Co., Inc. v. Chester Water Auth.*,
    2014 WL 4851498 (E.D. Pa. Sept. 30, 2014) ........................................................18

*In re: Autozone, Inc.*,
    No. 3:10-MD-02159-CRB, 2016 WL 4208200 (N.D. Cal. Aug. 10, 2016),
    *reconsideration denied sub nom,* No. 3:10-MD-02159-CRB, 2016 WL
    6834138 (N.D. Cal. Nov. 21, 2016)...........................................................................9

*Conseco Life Ins. Co. v. Am. Worldwide Ins., Inc.*,
    No. 104CV2035DFHTAB, 2005 WL 1865516 (S.D. Ind. Aug. 4, 2005)................4

*Eljer Mfg., Inc. v. Kowin Dev. Corp.*,
    14 F.3d 1250 (7th Cir. 1994) ...................................................................................17

*Generica Ltd. v. Pharm. Basics, Inc.*,
    125 F.3d 1123 (7th Cir.1997) ....................................................................................4

*Gibson v. County of Riverside*,
    181 F. Supp. 2d 1057 (C.D. Cal. 2002) .....................................................................8

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
    332 F.3d 976 (6th Cir. 2003) ...................................................................................17

*Guo v. Citibank Glob. Markets, Inc.*,
    No. 1:04-CV-2006LJMWTL, 2007 WL 3286696 (S.D. Ind. Nov. 5, 2007)......5, 10

*Hall St. Assocs., LLC v. Mattel, Inc.*,
    552 U.S. 576 (2008).....................................................................................................3

*In re Husain*,
    533 B.R. 658 (Bankr. N.D. Ill. 2015) *aff'd sub nom. Matter of Husain*, No. 15-
    3308, 2017 WL 3393056 (7th Cir. Aug. 8, 2017)...................................................18

*Int'l Union of Bricklayers & Allied Craftworkers Dist. Council of Wisc. v.
    Middleton Const., Inc.*,
    No. 11 99-C-0433-C, 2000 WL 34228199 (W.D. Wis. Sept. 20, 2000) .................4

*Int'l Union of Operating Engineers v. Murphy Co.*,
    82 F.3d 185 (7th Cir.1996) .........................................................................................4

*Jackson v. A-C Prod. Liab. Trust*,
622 F. Supp. 2d 641 (N.D. Ohio 2009)................................................................13

*Kenny v. Runyon*,
1994 WL 362178 (N.D. Ill. July 11, 1994)...........................................................12

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
729 F.3d 99 (2d Cir. 2013).............................................................................13, 14

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store*, *Inc.*,
735 F.3d 735 (7th Cir. 2013) ................................................................................8

*Merit Ins. Co. v. Leatherby Ins. Co.*,
714 F.2d 673 (7th Cir. 1983), *mandate amended on other grounds*, 728 F.2d
943 (7th Cir. 1984)......................................................................................5, 10

*Morelite Const. Corp. v. N.Y. City Dist. Council Carpenters Ben. Funds*,
748 F.2d 79 (2d Cir. 1984)...........................................................................5, 10

*Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*,
990 F.2d 957 (7th Cir. 1993) .......................................................................4, 16

*People v. Vargas*,
174 Ill. 2d 355 (1996) ..................................................................................13, 14

*Pittsburgh Press Club v. United States*,
579 F.2d 751 (3d Cir. 1978)..................................................................................8

*Reg'l Council of Carpenters v. Unique Casework Installations, Inc.*,
No. 14 C 2911, 2014 WL 6980723 (N.D. Ill. Dec. 9, 2014) ...................................4

*Senne v. Kansas City Royals Baseball Corp.*,
315 F.R.D. 523 (N.D. Cal. 2016)...........................................................................9

*Sirko v. Int'l Bus. Machines Corp.*,
No. CV 13-03192 DMG SSX, 2014 WL 4452699 (C.D. Cal., Sept. 3, 2014)......8, 9

*Smith v. Am. Arbitration Ass'n, Inc.*,
233 F.3d 502 (7th Cir. 2000) ..............................................................................11

*State v. Johnson*,
53 Kan. App. 2d 734 (2017) ......................................................................2, 13, 14

*Stone v. Bear, Stearns & Co., Inc.*,
872 F. Supp. 2d 435 (E.D. Pa. 2012) ...................................................................13

*Tamari v. Bache Halsey Stuart Inc.*,
619 F.2d 1196 (7th Cir. 1980) ...............................................................................4

*U.S. v. Krohn*,
  560 F.2d 293 (7th Cir. 1977) ...............................................................16

*United States v. Mortimer*,
  161 F.3d 240 (3d Cir. 1998)...........................................................13, 14

*Wise v. Wachovia Securities, LLC*,
  450 F.3d 265 (7th Cir. 2006) ..............................................................3

## Statutes

9 U.S.C. § 10...................................................................11, 13, 14, 15

9 U.S.C. § 11(a) ................................................................................17

Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185 ..............................3

Defendant Waterstone Mortgage Corporation ("Waterstone") submits its reply in support of its motion to vacate or, in the alternative, to modify the arbitration award issued against it on July 5, 2017.

## I.    <u>INTRODUCTION</u>

Plaintiff Pamela Herrington ("Herrington") admits she sought to confirm an arbitration award that overpaid Claimants by $20,000. She nevertheless contends Waterstone's motion to vacate or modify the award is unsupported by law. Plaintiff accuses Waterstone of misstating the standard of review and contends its primary bases for vacating the award—the evident bias of the Arbitrator and the Arbitrator's misconduct and failure to hear evidence by sleeping—are frivolous and lack merit.

However, as Waterstone correctly noted, an arbitrator must provide a fundamentally fair hearing. Even under the FAA's limited standard of review, a court may vacate an award on the basis of "evident partiality" or misconduct in refusing to hear evidence. Waterstone has advanced credible evidence such grounds exist here.

<u>First</u>, the Arbitrator demonstrated bias when, *after the close of class discovery* and faced with "*meager*" evidence supporting certification, he reserved ruling and ordered the creation of a flawed questionnaire. Contemporaneously, the Arbitrator indicated Claimants' request for additional class discovery served his own interest, as it would allow him to continue to work on the case and get paid for it. (Karen Decl. ¶ 10.) Ultimately, the questionnaire adopted was largely what Plaintiff proposed, and included a cover letter advising the loan originators they were part of a putative class action lawsuit and sought to recover unpaid wages based on their responses. The law establishes surveys created in this manner contain multiple indicia of bias.

1

Herrington attempts to view the questionnaire in a vacuum. She argues the flawed survey was at most legal error. But the questionnaire must be viewed in its proper context. The Court must consider the Arbitrator's contemporaneous comments about class discovery being in his financial interest, and he reserved ruling on Herrington's "meager" certification motion to re-open discovery for the questionnaire. The Arbitrator ultimately relied heavily on the questionnaire results in granting certification. The questionnaire provided the "evidence" transforming Herrington's "meager" showing of certification to one the Arbitrator found supported certification. This drastically altered the course of the arbitration, and paved the way for the award. Given these circumstances, and the Arbitrator's own comments, the flawed questionnaire and the facts surrounding its implementation evidence bias.

Second, the Arbitrator committed misconduct by sleeping during testimony. While Herrington contends this allegation was "unsupported," "absurd," and "libelous," Waterstone submitted three declarations under penalty of perjury and two photographs evidencing the Arbitrator's sleeping during arbitration. As noted by multiple courts, a sleeping judge undermines the integrity of the proceeding and constitutes structural error warranting reversal. In response, Herrington contends Waterstone was not prejudiced by any sleeping, waived its argument by failing to object on the record, and cannot show how sleeping is misconduct under the FAA. But Waterstone never waived this argument because, as Herrington concedes, it raised it with the AAA before arbitration ended. Furthermore, if an arbitrator is sleeping during arbitration, for whatever portion he slept, he was "not presiding" over it. *See State v. Johnson*, 53 Kan. App. 2d 734, 741–42 (2017). If a sleeping arbitrator is not presiding over arbitration, he or she cannot possibly be considering the evidence presented during it. Waterstone submitted evidence the Arbitrator was sleeping during loan officer testimony and the critical testimony of

its CEO Eric Egenhoefer. Given these facts, the Arbitrator's sleeping constituted misconduct, resulted in the refusal to hear material testimony, and deprived Waterstone of a fundamentally fair hearing. Given the multi-million dollar award issued against Waterstone, the Arbitrator's inability to be attentive to testimony severely prejudiced Waterstone.

For these reasons, and those that follow, Waterstone respectfully requests the Court vacate the award in its entirety. At the very least, the Court should modify the award to correct $20,000 in double-counting.

## II.    WATERSTONE PROPERLY STATED THE STANDARD OF REVIEW

Herrington first argues Waterstone misstated the standard of review under the FAA by claiming the FAA permits "wide ranging review of arbitral awards." (Opposition at p. 8.) That is simply not true. Waterstone actually *began* its discussion by copying *verbatim* the legal standard for a court to vacate an award under the FAA. (Motion at p. 10.) Waterstone further acknowledged judicial review under the FAA is "limited." (*Id.*)[1]

Herrington appears to take issue with Waterstone's citation of "non-FAA decisions" and decisions issued prior to the Supreme Court's 2008 opinion in *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). On this point, Herrington's argument is misplaced and unsupported by case law.

To the extent Waterstone referenced rulings decided under the Labor Management Relations Act ("LMRA"), there was no misstatement of the law. As noted by the Seventh Circuit in a case Herrington actually cites, the "standard of review is the same whether the award arises under Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185 ("Section 301") … or under the

---

[1] Waterstone also accurately cited the standard, as interpreted by the Seventh Circuit, for setting aside awards that are "in manifest disregard of the law." Herrington cites this *exact standard* under *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 268-69 (7th Cir. 2006) on page 15 of its Opposition.

Federal Arbitration Act, 9 U.S.C. § 10." *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993); *see also Int'l Union of Operating Engineers v. Murphy Co.,* 82 F.3d 185, 188–89 (7th Cir.1996) (citing *Nat'l Wrecking Co.* for the proposition the FAA and the LMRA establish the "same governing principles" and "[c]ourts routinely cite decisions under one statute as authority for decisions under the other"); *Reg'l Council of Carpenters v. Unique Casework Installations, Inc.*, No. 14 C 2911, 2014 WL 6980723, at *2 (N.D. Ill. Dec. 9, 2014) (same).

For this reason, it is no surprise case law decided under the FAA echoes the statements of law cited by Waterstone. For example, Waterstone noted that, although review under the FAA is limited, as a baseline, an arbitrator must "provide a fundamentally fair hearing." *Generica Ltd. v. Pharm. Basics, Inc.,* 125 F.3d 1123, 1130 (7th Cir.1997); *accord Int'l Union of Bricklayers & Allied Craftworkers Dist. Council of Wisc. v. Middleton Const., Inc.*, No. 11 99-C-0433-C, 2000 WL 34228199, at *4 (W.D. Wis. Sept. 20, 2000) (Crabb, J.). That sentiment has been echoed in cases decided under the FAA. *See, e.g., Conseco Life Ins. Co. v. Am. Worldwide Ins., Inc.*, No. 104CV2035DFHTAB, 2005 WL 1865516, at *3 (S.D. Ind. Aug. 4, 2005) (noting, in case under the FAA, "[a]n arbitrator must provide the parties with a fundamentally fair hearing").

Waterstone did not misstate the applicable standard of review. Herrington's suggestion to the contrary should be rejected.

## III. THE ARBITRATOR'S CONDUCT EVIDENCES BIAS OR PARTIALITY AGAINST WATERSTONE

Under the FAA, an award may be vacated for "bias" if the arbitrator's conduct shows the "evident partiality" of the arbitrator, or the "reasonable appearance of such partiality." *Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d 1196, 1200 (7th Cir. 1980). Partiality, as used under the FAA, is synonymous with bias in favor for or against a party.

Courts in different circuits have grappled with the standard of bias required under the FAA. However, certain principles govern the inquiry. In demonstrating bias or partiality, although the circumstances should be strongly "suggestive of bias," a party does not have to show proof of "actual bias." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 681-82 (7th Cir. 1983), *mandate amended on other grounds*, 728 F.2d 943 (7th Cir. 1984). An "actual bias" standard would be nearly impossible to prove absent direct statements of partiality or similar admissions. *Id; see also Morelite Const. Corp. v. N.Y. City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 84 (2d Cir. 1984) ("we cannot countenance the promulgation of a standard for partiality as insurmountable as 'proof of actual bias'... Bias is always difficult, and indeed often impossible, to 'prove.' Unless an arbitrator publicly announces his partiality, or is overheard in a moment of private admission, it is difficult to imagine how 'proof' would be obtained.") While more than the "mere appearance of bias" is required, bias or partiality generally exists if the party can show a "reasonable person" would conclude the arbitrator was partial to one side in the arbitration. *Guo v. Citibank Glob. Markets, Inc.*, No. 1:04-CV-2006LJMWTL, 2007 WL 3286696, at *3 (S.D. Ind. Nov. 5, 2007).

Here, given the totality of the circumstances, there is demonstrable evidence of arbitrator bias. Contrary to Herrington's assertion, Waterstone is not relying *solely* on the Arbitrator's decision to distribute a questionnaire after the close of class discovery. It is also relying on the circumstances under which this decision emerged, *as well as* the Arbitrator's contemporaneous comments about how additional class discovery would financially benefit him. (Karen Decl. ¶ 10.) While Herrington would like to view the questionnaire in a vacuum, and even structures its brief to separately discuss the questionnaire and the Arbitrator's comments (*see* Opposition, pp. 11-17, §§ II-III), they are all part of the same bias argument. Waterstone's argument must be

viewed in its proper context. That context involves the stage of proceedings during which the questionnaire arose, the comments the Arbitrator made about class discovery, and the dramatic change of course the questionnaire caused in the arbitration:

- Before issuing the questionnaire, class discovery had *closed*. (Karen Decl. ¶ 4.)

- The Arbitrator held a hearing on class certification on October 30, 2013. Before the hearing, the parties made "extensive evidentiary submissions," and "thoroughly briefed" the issue of certification. (Karen Decl. ¶ 4, Ex. 2 at p. 2.) The Arbitrator characterized Herrington's evidence supporting certification as "*meager*." (*Id.*, Ex. 2 at p. 3 [emphasis added].)

- Rather than ruling on certification, the Arbitrator decided to re-open class discovery at Herrington's request. (Karen Decl. ¶ 4, Ex. 2 at p. 4.) She proposed sending a questionnaire to *all* Waterstone loan originators before ruling on certification. (*Id.*)

- The Arbitrator noted the questionnaire could help fill an evidentiary void for Herrington, namely, the lacking evidence of "widespread" violations required to support certification. (Karen Decl. ¶ 4, Ex. 2 at p. 4.) Although Waterstone objected Herrington could have made this request before the close of class discovery, the Arbitrator nevertheless reserved ruling pending release of the questionnaire. (*Id.*, Ex. 2 at p. 5.)

- At the October 30, 2013 hearing, the Arbitrator contemporaneously made two comments. First, the Arbitrator stated that, as an arbitrator, he had no duty to follow the law *per se*. Second, and more importantly, the Arbitrator joked Claimants' request for additional class discovery would allow him to continue to work on the case, which he found interesting, and would allow him to continue to get paid. (Karen Decl. ¶ 10.)

- Herrington proposed a flawed questionnaire. (Karen Decl. ¶ 5, Ex. 3.) The attached cover letter explained to loan originators there was a lawsuit in which the very same loan originators sought to recover potential unpaid wages and expenses.

- Waterstone objected to the proposal. (Karen Decl. ¶ 6, Ex. 4.) The Arbitrator rejected Waterstone's objections, and instead adopted the questionnaire and cover letter Herrington created with minimal revisions. (*Id.* ¶ 7, Ex. 6.)

- After distributing the cover letter and questionnaire, the Arbitrator granted the motion for class certification. (Karen Decl. ¶ 9, Ex. 8.) The Arbitrator relied *heavily* on the questionnaire responses in its ruling. He concluded although the survey responses were unsworn, "devoid of context," "not subject to cross-examination," and gleaned from a "self-selected group," (1) "substantial FLSA violations … are indicated to have occurred across a broad range of Waterstone's branch offices." (*Id.*, Ex. 8 at pp. 7.) Despite a lack of uniform responses, the Arbitrator found class arbitration was appropriate, on an opt-in basis. (*Id.* at pp. 7, 15.)

In short, after commenting continued class discovery serves his financial self-interest, the Arbitrator effectively directed the parties and then created the class-wide evidence he relied upon to grant Herrington's motion for certification. This decision transformed Herrington's initial "meager" showing in support of certification to one that supported certification. Given the totality of these circumstances, the Arbitrator's conduct evidences partiality and/or bias in favor of Herrington on the key issue of class certification.

Herrington agrees there was only "meager" evidence supporting certification prior to the implementation of the questionnaire. (Opposition, p. 11 n. 3.) However, Herrington makes three arguments in support of its position there was no arbitrator bias or partiality. First, Herrington contends Waterstone's argument is one of legal error, not bias. (*Id.*, pp. 13-14.) Second,

Herrington contends there was insufficient evidence of bias because the Arbitrator ruled for both sides, and his comments were "stray remarks." (*Id.*, p. 14.) Third, Herrington argues there was no bias or prejudice because the Arbitrator's final award came years later, after further proof and/or stipulations about loan originators. (*Id.*, pp. 11, 16.)

A.     **The Facts Surrounding Implementation of the Questionnaire Show More Than Mere Legal Error, But Evidence Bias**

Viewed as a whole, Waterstone submits the Arbitrator's conduct showed more than legal error, but evidenced bias or partiality. To be sure, Waterstone believes the questionnaire failed to comport with the basic standards governing surveys. Substantial deficiencies in the design or execution of a survey are grounds for its exclusion. *Pittsburgh Press Club v. United States*, 579 F.2d 751, 759-60 (3d Cir. 1978); *Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1067 (C.D. Cal. 2002). Here, the Arbitrator's survey contained multiple deficiencies:

- *First,* the survey asked overly simplistic questions not designed by an expert and provided for binary, "yes" or "no" answers. Karen Decl. ¶ 8, Ex. 7; *Sirko v. Int'l Bus. Machines Corp.*, No. CV 13-03192 DMG SSX, 2014 WL 4452699, at *4 (C.D. Cal., Sept. 3, 2014) (questions only allowing for binary responses show a "lack of expertise").

- *Second*, surveys conducted by one who has a financial interest in its results are "prone to bias." *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store*, *Inc.*, 735 F.3d 735, 741 (7th Cir. 2013). The reason is simple: those who have a financial interest in the outcome of the survey (such as a plaintiff or a party expert) are "likely to be biased in favor of [that] party." *Id.*; *see also Sirko*, 2014 WL 4452699, at *4 (noting a survey "designed and administered" by one party can demonstrate "bias on its face.") Here, because the Arbitrator had a financial interest in promoting class discovery, and because he effectively adopted Herrington's survey questions, the Arbitrator's survey was "prone to bias."

- *Third,* the cover letter of the questionnaire informed the recipients they stood to recover wages in a potential lawsuit. Surveys that suggest to the recipient they stand to gain from their responses exhibit "self-interest bias." *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 590 (N.D. Cal. 2016); *In re: Autozone, Inc.*, No. 3:10-MD-02159-CRB, 2016 WL 4208200, at *18 (N.D. Cal. Aug. 10, 2016), *reconsideration denied sub nom,* No. 3:10-MD-02159-CRB, 2016 WL 6834138 (N.D. Cal. Nov. 21, 2016); *Sirko*, 2014 WL 4452699, at *4 ("The survey recipients had to have been aware they would be potential beneficiaries of such a lawsuit. This undermines any possible inference the survey responses were objective. Because they survey lacks basic indicators of reliability, the Court finds it inadmissible.").

But the circumstances regarding the Arbitrator's implementation of the survey demonstrate more than mere legal error. As noted above, when coupled with the flawed survey design, the Arbitrator's *own* comments and the procedural history evidence bias. Specifically, the Arbitrator stated at the October 30, 2013 hearing (a) he was not obligated to follow the law, and more importantly, (b) Herrington's request for additional class discovery would financially benefit him. (Karen Decl. ¶ 10.)[2] A week after these comments, the Arbitrator reserved ruling on Herrington's "meager" showing on certification and re-opened discovery. (*Id.* ¶ 4, Ex. 2.) The Arbitrator then effectively adopted Herrington's version of the class-wide questionnaire. The questionnaire contained not only design flaws, but the inherent "bias" in surveys conducted by an individual who has a financial interest in the results of the survey, as well as a "self-interest bias" due to the survey's cover letter informing recipients of the lawsuit and their prospective recovery. (*Id.*, ¶¶ 5-8, Exs. 3-7.) After distributing the flawed questionnaire, the evidence

---

[2] While Herrington disputes that the Arbitrator made the comment about not being obligated to follow the law, she does not dispute the Arbitrator's comment about class discovery benefitting him financially. (Opposition, pp. 15-16.)

supporting class certification changed from "meager," to sufficient in the Arbitrator's mind to support certification. (*Id.* ¶ 9, Ex. 8.) In short, the Arbitrator's questionnaire provided the key information Herrington needed but was previously lacking to certify the class. Arbitrator Pratt's contemporaneous comments show his own financial interests were aligned with Herrington's interests in proceeding on a class basis.

Although Herrington tries to quarantine the Arbitrator's comments as "stray remarks," and discusses them apart from the questionnaire, they must be considered together. The Arbitrator's comments inform his decisions. A party need not show "actual bias" to support a claim of bias or partiality, precisely because a direct statement of actual bias would be nearly impossible to prove. *Merit Ins. Co.*, 714 F.2d at 681-82 *Morelite*, 748 F.2d at 84. However, the Arbitrator's comments unmistakably connect his own self-interest to the result he reached, which was certification of the class. Given his *stated* self-interest in proceeding on a class basis, and how the questionnaire arose, the Arbitrator's conduct went far beyond any inherent bias or predisposition an arbitrator may have to preside over a larger, class case. It rose to a higher level that was strongly suggestive of bias. *Merit Ins. Co.*, 714 F.2d at 681-82. Given these facts, a reasonable person could conclude the Arbitrator's decision-making evidenced partiality towards Herrington. *Guo*, 2007 WL 3286696, at *3.

**B.     The Arbitrator's Questionnaire and Resulting Certification Ruling Changed The Entire Course of Litigation and Strongly Prejudiced Waterstone**

Herrington last argues even if there was an issue with the questionnaire, these issues cannot justify vacating the award, which was issued years later. (Opposition, pp. 13, 16.) Herrington essentially argues because the award was supported by evidence and/or stipulations during trial, the prior class certification ruling following the questionnaire was somehow immaterial and outdated. Not so.

The FAA allows a party to move to vacate only after the issuance of an "award." 9 U.S.C. § 10. "The time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered." *Smith v. Am. Arbitration Ass'n, Inc.*, 233 F.3d 502, 506 (7th Cir. 2000). Thus, courts may not entertain a challenge of bias until the issuance of a final arbitration award. *Allstate Ins. Co. v. One Beacon American Ins. Co.*, 989 F. Supp. 2d 143, 147 (D. Mass. 2013). Waterstone timely made this motion to challenge what it believes was underlying bias of the Arbitrator. Thus, it is immaterial the questionnaire was ordered in 2013 and issued in 2014.

The fact is, Waterstone was deeply prejudiced by the implementation of the class questionnaire after the close of class discovery. Absent the survey, evidence supporting class certification was "meager." Thus, without the survey, there would be no class or collective action. There would be one plaintiff, not 175 Claimants, and there would be no award issued on behalf of these 175 Claimants. Therefore, the award in excess of $7 million dollars can be traced *directly* to the certification ruling. The lynchpin of that ruling was the class questionnaire. For these reasons, Herrington's last argument can be easily dismissed.

## IV. WATERSTONE'S EVIDENCE ESTABLISHES THE ARBITRATOR WAS SLEEPING DURING ARBITRATION, WHICH CONSTITUTES MISCONDUCT

### A. Waterstone Submitted Sworn Testimony and Photographic Evidence of the Arbitrator Sleeping

Before addressing Herrington's second argument, Waterstone must correct some misstatements of fact. Waterstone did not simply make an unfounded allegation the Arbitrator was sleeping during arbitration. It submitted *three* declarations signed under penalty of perjury, plus photographic evidence, supporting its contention. Since Herrington largely ignores this testimony, it is set forth for the Court here:

- "On October 17, 19, and 20, 2016, I attended the evidentiary hearing in this matter. During the hearing, I personally observed the Arbitrator sleeping on multiple occasions." (Karen Decl. ¶ 11.)

- "On October 17, 2016, I attended the evidentiary hearing in this matter before Arbitrator Pratt. During direct and cross-examination testimony of claimant loan originators, I personally observed Arbitrator Pratt sleeping on at least three separate occasions." (Ziebell Decl. ¶ 3.)

- "On October 19 and 20, 2016, I attended the evidentiary hearing in this matter before Arbitrator Pratt. During both days of the hearing that I attended, including during my testimony, I personally observed Arbitrator Pratt sleeping on multiple occasions." (Egenhoefer Decl. ¶ 3.)

This evidence was submitted under penalty of perjury. Waterstone has also submitted a supplemental declaration clarifying the Arbitrator was sleeping during the testimony of Mr. Egenhoefer and other claimant loan officers on October 19 and 20, 2016, and was not merely sleeping during breaks. It submitted additional photographic evidence with this supplemental declaration. (Supplemental Egenhoefer Decl., Exs. A-B.) Nevertheless, Herrington begins its argument with the outrageous statement that Waterstone's claim the Arbitrator was sleeping is "unsupported" and "merely an unfounded allegation." (Opposition at p. 17.) Herrington further claims Waterstone's evidence only referred to some "unspecified" portion of the proceedings, and was "absurd, libelous and smacks of retribution." (*Id.*)

Declarations submitted under penalty are not merely unfounded allegations. Courts consistently distinguish mere allegations, which do not support motions, from sworn testimony, which can and do support motions. *See, e.g., Kenny v. Runyon*, 1994 WL 362178, at *3 (N.D. Ill. July 11, 1994) (distinguishing allegations from sworn testimony for purposes of summary

judgment motions). Given Waterstone's sworn testimony, Herrington cannot possibly assert in good faith Waterstone's claims the Arbitrator was sleeping are "unsupported."

**B.** **The Arbitrator's Sleeping During Testimony Constitutes Misconduct That Justifies Vacating The Award**

Given the clear evidence Waterstone submitted that the Arbitrator was sleeping, the only question is whether this warrants vacating his award.

Under the FAA, vacating an award is appropriate where the arbitrator commits "misconduct" in refusing to hear evidence pertinent and material to the controversy, or engages in other "misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Misconduct or misbehavior exists where there is a denial of "fundamental fairness" by the arbitrator. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013); *Stone v. Bear, Stearns & Co., Inc.*, 872 F. Supp. 2d 435, 450 (E.D. Pa. 2012).

Although there is scant authority discussing sleeping arbitrators, there have been many opinions regarding sleeping jurors and judges. Under federal law, "sleeping during trial by a juror constitutes misconduct." *Jackson v. A-C Prod. Liab. Trust*, 622 F. Supp. 2d 641, 648 (N.D. Ohio 2009) (citing *United States v. Sherrill*, 388 F.3d 535, 537 (6th Cir. 2004)). Furthermore, courts have found an even deeper "structural error" exists when the judge slept through portions of trial. *State v. Johnson*, 53 Kan. App. 2d 734, 741–42 (2017). The reason is "[f]or whatever portion of the trial the judge slept, the judge was not presiding over [the] trial." *Id.* at 741. Courts have similarly found "structural error" when a judge is absent or missing from the courtroom during trial. *United States v. Mortimer*, 161 F.3d 240, 241-42 (3d Cir. 1998); *People v. Vargas*, 174 Ill. 2d 355, 366-67 (1996) (finding reversible error when a judge left the bench during a portion of witness examination). Those courts have reasoned a judge's "active presence on the bench" is "an essential safeguard which aids in providing a defendant with a fair trial," and

without this presence, there is "*per se* reversible error." *Vargas*, 174 Ill. 2d at 364. In other words, the presence of a neutral arbiter is *fundamental* to a fair trial. Absent this presence, the forum is effectively "destroyed" because the entire structure of the trial has been removed, and there is "no way of repairing" this error. *Mortimer*, 161 F.3d at 241.

When faced with sleeping or absent judges, the above cases have ordered reversal of trial proceedings on this basis alone. The same result is appropriate under the FAA. The key question, as noted above, is whether misconduct or misbehavior deprives a party of a fundamentally fair trial. *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104. Furthermore, misconduct exists where an arbitrator refuses to hear evidence pertinent to the controversy. 9 U.S.C. § 10(a)(3). A sleeping judge, by definition, cannot be "presiding over" a proceeding during the portion of time he or she is sleeping. *Johnson*, 53 Kan. App. 2d at 741. If a judge cannot be presiding over a hearing while sleeping, he or she certainly cannot hear evidence being presented during that hearing. The failure to hear evidence constitutes misconduct under the FAA.

In fact, the failure of an arbitrator to be awake during an arbitration is even *more concerning* than it is for a judge. In the above cases, the judge was presiding over criminal jury trials. The judge was not serving as the finder of fact, but the courts nevertheless found there was structural error warranting reversal. In arbitrations, however, *the arbitrator is the finder of fact*. It is his or her job to evaluate the credibility of witnesses and develop the factual record forming the basis for his or her legal conclusions. An arbitrator cannot be fact-finding or properly considering evidence when he or she is sleeping. For this reason alone, the Court should vacate the arbitrator's award.

In response, Herrington argues any sleeping did not prejudice Waterstone. Herrington claims "[n]owhere in Waterstone's motion does it claim that the Arbitrator slept during

testimony about a disputed issue or during testimony requiring a credibility determination upon which the Arbitrator found against Waterstone." (Opposition at p. 18). But that is not true. Waterstone submitted testimony demonstrating the Arbitrator was asleep not just during lulls in arbitration, but during the testimony of *multiple witnesses*. It submitted evidence the Arbitrator was sleeping during the "direct and cross-examination testimony of claimant loan officers." (Ziebell Decl. ¶ 3.) It also submitted sworn testimony the Arbitrator slept during the testimony of Waterstone's CEO Eric Egenhoefer. (Egenhoefer Decl. ¶ 3.) Finally, it submitted a supplemental declaration clarifying the Arbitrator was sleeping during the testimony of Mr. Egenhoefer and other loan officers, and not merely during breaks. (Supp. Egenhoefer Decl. ¶¶ 4-9, Exs. A-B.)

The testimony of Mr. Egenhoefer was critical to the Arbitrator's finding of liability. In his April 13, 2017 partial award, the Arbitrator specifically noted Mr. Egenhoefer's testimony was "incredible" on the issue of why Waterstone transitioned its loan originators to a minimum-wage-plus-overtime compensation system. (Karen Decl. ¶ 12, Ex. 9 at p. 22.) In part on this basis, the Arbitrator found that although Waterstone established its loan originators were exempt under the FLSA, Waterstone had waived or was estopped from making this argument due to its conduct in re-classifying the loan originators. The Arbitrator thus found Waterstone liable under the FLSA, paving the way for its damages award. (*Id.* at p. 22-23.) Thus, Mr. Egenhoefer's testimony, and his credibility, was a critical issue driving the Arbitrator's reasoning. It is not clear how the Arbitrator could properly assess Mr. Egenhoefer's credibility if he was sleeping during portions of his testimony. The same would apply to the testimony of loan originators.

Given this evidence, Waterstone has made a strong showing the Arbitrator's sleeping prejudiced Waterstone because it occurred during the hearings, and during the presentation of evidence that was "pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). The refusal to hear such evidence constitutes misconduct under the FAA. *Id.* Simply put, there cannot be a

fundamentally fair trial if the Arbitrator is sleeping during testimony. This lack of fundamental fairness gives rise to actionable misconduct and/or misbehavior under the FAA.

### C.     <u>Waterstone Did Not Waive Any Argument Regarding Sleeping</u>

Herrington last argues Waterstone waived its argument by failing to object to the Arbitrator's sleeping "on the record." (Opposition at pp. 17, 19-20.) However, Herrington cites no authority for the standard she espouses, which is essentially a requirement that Waterstone instantaneously object to preserve this issue for the district court.

Instead, Seventh Circuit law simply states a party cannot withhold arguments in arbitration, and then pursue them in federal court. *See Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993). But that is not what happened here. As conceded in Herrington's Opposition, Waterstone objected to the Arbitrator's conduct in a December 16, 2016 letter to the AAA's administrative body *during the arbitration*, before hearings were resumed that month. (Opposition at p. 20; ECF 122-9, 122-10, Exs. 9-10 .)

Herrington nevertheless argues waiver under *U.S. v. Krohn*, 560 F.2d 293, 297 (7th Cir. 1977). That case, however, is readily distinguishable. In *Krohn*, defense counsel only moved for a mistrial on the ground a juror was sleeping *after* the jury returned a verdict. *Id.* In other words, the defense never raised the issue until *after* trial ended. Here, however, Waterstone objected to the Arbitrator's sleeping during the arbitration. It followed the proper channels for doing so.[3] Herrington cites no authority for its narrow position Waterstone needed to raise this objection on the record, where it raised the issue before the end of the arbitration. Nor does Herrington explain why raising this issue through AAA's Administrative Review Council would deprive

---

[3] Specifically, the American Arbitration Association's ("AAA's") Employment Arbitration Rule 16 provides that the AAA "shall determine" whether an arbitrator should be disqualified for issues of partiality.

Waterstone of its opportunity, under the FAA, to seek vacatur through the courts after the issuance of a final award, as authorized under 9 U.S.C. § 10. For these reasons, Waterstone did not waive its right to pursue this issue with the Court.

**V. HERRINGTON ADMITS THE ARBITRATOR'S AWARD RESULTED IN DOUBLE COUNTING, YET ASKED THE COURT TO CONFIRM THIS ERRONEOUS AWARD AND HAS NOT CORRECTED ITS MOTION WITH THE COURT**

The district court should modify or correct an award where there is "an evident material miscalculation of figures" giving rise to it. 9 U.S.C. § 11(a). "Double recovery constitutes a materially unjust miscalculation which may be modified under section 11 of the [FAA]." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994).

At the very least, this Court must correct an obvious double counting issue in the Arbitrator's award. On page two, the Arbitrator awarded $3,318,851 in attorney fees, costs, and incentive fees against Waterstone. (Karen Decl. ¶ 15, Ex. 12 at p. 2.) However, on the next page, he awarded $3,318,851 in attorney fees and costs, *plus* an additional $20,000 in incentive fees already included in the $3,318,851 figure. (*Id.*, Ex. 12 at p. 3.) Simply put, the Arbitrator awarded $20,000 too much in his award.

Herrington agrees the Arbitrator double-counted $20,000 in incentive fees to Herrington its award. (Karen Decl. ¶ 15, Ex. 12.) Unsurprisingly, however, Herrington attempts to deflect the blame on this issue to Waterstone.[4] Herrington's argument misses the mark. A lawyer owes a duty of candor to the Court. As part of this duty, a party shall not "fail to correct a false statement

---

[4] In doing so, Herrington introduces Exhibit 14, which is an email from her counsel that began "FOR SETTLEMENT PURPOSES ONLY – NOT ADMISSIBLE." (ECF 122-14, p. 3.) There is a strong public policy in favor of protecting the confidentiality of settlement negotiations. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). As a result, many courts have recognized a settlement privilege protecting communications made in the course of settlement negotiations. *Id.* Herrington ignores this authority.

of material fact or law previously made." *In re Husain*, 533 B.R. 658, 695 (Bankr. N.D. Ill. 2015) *aff'd sub nom. Matter of Husain*, No. 15-3308, 2017 WL 3393056 (7th Cir. Aug. 8, 2017) (citing ABA Model Rule 3.3). Counsel therefore, have an "affirmative obligation to correct" misstatements made to the Court. *Artesian Water Co., Inc. v. Chester Water Auth.*, 2014 WL 4851498, at \*21 (E.D. Pa. Sept. 30, 2014) (interpreting Pennsylvania rule with substantially identical language to ABA rules); *see also* ABA Model Rule 3.3, Comment ("Having offered material evidence in the belief that it was true, a lawyer may subsequently come to know that the evidence is false…In such situations, the advocate's proper course is to remonstrate with the client confidentially, advise the client of the lawyer's duty of candor to the tribunal and seek the client's cooperation with respect to the withdrawal or correction of the false statements or evidence.")

Waterstone's actions have no bearing on this affirmative duty. The truth is, Herrington filed a motion with this Court, asking it to confirm and thereby sanction the double recovery it now acknowledges was error. Herrington represented the award containing these errors was "strongly supported by both the law and the facts." (Dkt. 103 at ¶ 36.) It represented there was "no basis" for vacating *or* modifying the award. (*Id.* at ¶ 38.) Herrington then sought to recover in its Prayer for Relief $3,318,851 in fees and costs, which already included the $20,000 incentive award to Herrington, *plus* an additional $20,000 in incentive fees already included in the $3,318,851 figure. (*Id.*, Prayer for Relief, ¶¶ B-C.)

Simply put, Herrington sought to confirm the award it now concedes is erroneous. In doing so, it invited error from this Court. Even if Herrington was not aware of the double counting until Waterstone raised the issue, once it learned of the error, she had an affirmative duty to correct it with the Court. Herrington did not do so. Instead, Herrington blames

Waterstone for failing to reach a stipulation on the issue. To make matters worse, in its Opposition, Herrington concludes by requesting the Court "deny Waterston's motion to vacate the award and grant [the] motion to confirm the award." (Opposition at p. 22.) Therefore, it appears Herrington is asking the Court—despite its admission of double counting—to nevertheless confirm the award. If this is Herrington's position, it is unsupportable.

For these reasons, Waterstone requests that, at the very least, the Court modify the Arbitrator's award. The award should only award $3,318,851 in attorney fees, costs, and incentive fees. It should not award an additional $20,000 in incentive fees on top of this amount.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Waterstone respectfully requests the Court (1) vacate the Arbitrator's award in its entirety, or alternatively (2) modify the award to reflect the mathematically correct amount of damages and fees and costs.

DATED:  August 25, 2017                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: _/s/ Spencer C. Skeen_____
        Spencer C. Skeen
        Tim L. Johnson
        Jesse C. Ferrantella
        Attorneys for Defendant WATERSTONE MORTGAGE CORPORATION