IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAMELA HERRINGTON, individually
and on behalf of all other similarly situated persons,

                                                 OPINION AND ORDER

        Plaintiffs,

                                            11-cv-779-bbc

    v.

WATERSTONE MORTGAGE CORPORATION,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Pamela Herrington filed this proposed class action under the Fair Labor Standards Act and state law, alleging that defendant Waterstone Mortgage Corporation failed to pay its loan officers for overtime work. Shortly thereafter, defendant moved to dismiss or stay the action on the ground that plaintiff's claims were subject to arbitration. In an order dated March 16, 2012, dkt. #57, I concluded that plaintiff's claims would have to be resolved through arbitration under an agreement between the parties, but that the National Labor Relations Act gave plaintiff the right to join other employees in her case. I closed the case administratively to allow the parties to proceed with arbitration.

Plaintiff commenced arbitration on March 23, 2012. George Pratt, a former judge for the Court of Appeals for the Second Circuit, was chosen as arbitrator. Arbitrator Pratt issued an order determining that the arbitration could proceed as a collective action. Ultimately, 174 class members opted into the arbitration. While arbitration was pending, I denied several motions by defendant seeking review of the arbitrator's decisions and of this

court's initial order regarding arbitration.  Dkt. ##72, 89, 92, 97.   The arbitrator issued several interim orders relating to liability and held a hearing in two parts on October 17, 19-21, 2016, and December 20-21, 2016.   On July 5, 2017, the arbitrator issued a final decision, holding that defendant was liable under the Fair Labor Standards Act for unpaid minimum wages and overtime and attorney fees and costs, but not liable under Wisconsin statutory or contract law.  Arbitrator Pratt ordered that defendant owed $7,267,919.00 in damages, $3,318,851.00 in attorney fees and costs and an incentive fee in the sum of $20,000 to be paid to named plaintiff Herrington.

Now before the court are several motions relating to the arbitrator's final award. Plaintiff has moved for confirmation of the award under 9 U.S.C. § 9, dkt. #99, while defendant has moved to vacate or modify the award.  Dkt. #112.  Plaintiff has moved for sanctions against defendant, arguing that defendant's objections to confirmation of the award are frivolous.  Dkt. #125.  Finally, defendant has moved to stay any action relating to the award until the United States Supreme Court reaches a decision in the consolidated cases of Ernst & Young, LLP v. Morris, 137 S. Ct. 809 (2017); Epic Systems Corp. v. Lewis, 137 S. Ct. 809 (2017); and National Labor Relations Board v. Murphy Oil USA, Inc., 137 S. Ct. 809 (2017) (collectively "Morris"), in which the Court is considering whether class and collective action waivers in arbitration agreements violate the National Labor Relations Act.  Dkt. #118.

 For the reasons below, I am denying defendant's motion to stay, defendant's motion to vacate the arbitration award and plaintiff's motion for sanctions.  I am confirming the

arbitration award, with one modification to correct the mathematical error identified by both parties.

## OPINION

### A. Motion to Stay

In March 2012, I concluded that plaintiff's employment agreement required that her wage claims be resolved through arbitration, but that the provision of the employment agreement prohibiting collective arbitration violated the National Labor Relations Act, as set forth in In re D.R. Horton, Inc., 357 NLRB No. 184 (2012), available at 2012 WL 36274. Dkt. #57. Since that time, multiple courts of appeal have considered whether class or collective action waivers in employment agreements violate the National Labor Relations Act. The Eighth, Fifth and Second Circuits have upheld class and collective action waivers in arbitration agreements and found that these waivers do not violate the Act. Cellular Sales of Missouri, LLC v. National Labor Relations Board, 824 F.3d 772 (8th Cir. 2016); Murphy Oil USA, Inc. v. National Labor Relations Board, 808 F.3d 1013 (5th Cir. 2015); D.R. Horton, Inc. v. National Labor Relations Board, 737 F.3d 344, 362 (5th Cir. 2013); Patterson v. Raymours Furniture Co., 659 F. Appx. 40 (2d Cir. 2016). The Ninth, Sixth and Seventh Circuits have held that such class action waivers violate the Act and are unenforceable. Morris v. Ernst & Young, LLP, 834 F.3d 975 (9th Cir. 2016); National Labor Relations Board v. Alternative Entertainment, Inc., 858 F.3d 393 (6th Cir. 2017); Lewis v. Epic Systems Corp., 823 F.3d 1147 (7th Cir. 2016). The Supreme Court granted

certiorari to review this issue in the consolidated <u>Morris</u> cases, and arguments were held in October 2017.  Defendant argues that this court should stay all proceedings pending the outcome of <u>Morris</u>.

Defendant has moved for a stay pursuant to the court's inherent power to stay cases before it.  <u>Landis v. North American Co.</u>, 299 U.S. 248, 254–55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.").  In determining whether to issue a stay, courts often consider the following factors: "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court."  <u>Grice Engineering, Inc. v. JG Innovations, Inc.</u>, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (citations omitted). In this instance, defendant argues that the Supreme Court's decision will confirm whether this case properly proceeded as a collective action during arbitration.

Defendant has not shown that a stay is warranted.  <u>Nken v. Holder</u>, 556 U.S. 418, 433-34 (2009) ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.")  This case has been pending since 2011 and is not at an early stage.  A further delay would prejudice plaintiff, who has been waiting several years through numerous delays to recover unpaid wages.  Additionally, despite defendant's assertion that a stay would "greatly simplify the issues and reduce the burden

of litigation," Dft.'s Br., dkt. #119, at 6, I am not persuaded that the Supreme Court's decision will necessarily simplify the issues in this case, however it rules.

Defendant suggests that if the Supreme Court concludes that class and collective action waivers do not violate the National Labor Relations Act, defendant will be able to rely on that decision to file a motion under Federal Rule of Civil Procedure 60(b)(6) challenging this court's March 2012 decision. But defendant's assumption is flawed. As I explained previously when denying a similar Rule 60 motion filed by defendant, "a change in law showing that a previous judgment may have been incorrect is not an 'extraordinary circumstance' justifying relief under Rule 60(b)(6)." Dkt. #92 at 4 (quoting Nash v. Hepp, 740 F.3d 1075, 1078 (7th Cir. 2014)). See also Selective Insurance Co. of South Carolina v. City of Paris, 769 F.3d 501, 509 (7th Cir. 2014) ("Rule 60(b) cannot be used to reopen the judgment in a civil case just because later authority shows that the judgment may have been incorrect.") Defendant has made no attempt to explain why a change in the law would justify reconsideration of a decision made in this case five years ago.

Moreover, the ultimate decision whether to allow this case to proceed on a collective basis was made by the arbitrator, not this court. In concluding that plaintiff should be permitted to proceed with arbitration on a collective basis, the arbitrator noted that this court had held that the class waiver provision was invalid under the National Labor Relations Act and that he was bound by that decision. Dkt. #99-3 at 8. However, the arbitrator also noted that the arbitration clause in the employment agreement was ambiguous: although it contained a waiver clause, it also stated that arbitration should

proceed "in accordance with the rules of the American Arbitration Association," which permits class arbitration. Id. at 9. The arbitrator noted that defendant "at the very least created an ambiguity, which must be construed against [defendant,] the party who drafted the Agreement." Id. The arbitrator also noted plaintiff's argument that the language of the so-called "waiver" clause should actually be read as permitting class or collective arbitration, rather than prohibiting it, though the arbitrator chose not to resolve that dispute. Id. at 8. In other words, the arbitrator's discussion suggests that he believed there were independent bases for permitting collective arbitration, aside from this court's previous decision. Thus, it is far from clear that the Supreme Court's decision in the Morris cases would cause the arbitrator to change his decision to permit collective arbitration.

Finally, regardless whether this case should have proceeded on a collective basis, it would have been necessary to take up defendant's claims of arbitrator bias and misconduct as they relate to plaintiff's individual claim. Additionally, it is possible that the arbitrator's merits decisions would apply in subsequent individual arbitrations under the doctrine of issue preclusion. E.g., Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1332 (11th Cir. 2010) (holding that factual findings in prior class action that had been decertified could have preclusive effect on subsequent individual actions). In short, the Supreme Court's decision will not clearly simplify the issues in this case. Under these circumstances, I decline to grant defendant's request for a discretionary stay of this case.

B.  Arbitration Award

1. Standard of review

Under the Federal Arbitration Act, courts may only "overturn the arbitrator's award on very narrow grounds." Flexible Manufacturing Systems Pty. Ltd. v. Super Products Corp., 86 F.3d 96, 99 (7th Cir. 1996).  See also Health Services Management Corp. v. Hughes, 975 F.2d 1253, 1258 (7th Cir. 1992) ("[T]he court's function in confirming or vacating an arbitration award is severely limited.")  Parties are not entitled to reargue their original claims in a proceeding to vacate an arbitral award, Widell v. Wolf, 43 F.3d 1150, 1151 (7th Cir. 1994), and "[f]actual or legal errors by arbitrators—even clear or gross errors—do not authorize courts to annul awards." Flexible, 86 F.3d at 100 (citation and quotations omitted).  See also Baravati v. Josphthal, Lyon & Ross, Inc., 28 F.3d 704, 706 (7th Cir. 1994) ("By including an arbitration clause in their contract the parties agree to submit disputes arising out of the contract to a nonjudicial forum, and we do not allow the disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision." (citations omitted)).  The Federal Arbitration Act identifies four limited circumstances in which an arbitral award may be set aside:

(1) where the award was produced by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators . . . ;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).  The Court of Appeals for the Seventh Circuit has explained that § 10(a)(4) permits a court to vacate an arbitration award if the award (1) requires the parties to violate the law, or (2) does not adhere to legal principles specified by the contract.  Halim v. Great Gatsby's Auction Gallery, Inc., 516 F.3d 557, 563 (7th Cir. 2008).  To warrant vacatur under § 10(a), the party challenging the arbitration award must "overcome, with clear and convincing evidence, the presumption of validity that an arbitral award enjoys."  Flexible, 86 F.3d at 100.  If the award is not vacated under § 10(a), then it is confirmed.  9 U.S.C. § 9 ("[A]ny party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected. . . .").

2.  Analysis

After holding a multi-day hearing and receiving extensive briefing from the parties, the arbitrator issued several decisions relating to plaintiff's claims in this case.  On April 13, 2017, the arbitrator issued a 30-page Partial Award on Liability, finding defendant liable under the Fair Labor Standards Act for unpaid minimum wages and overtime and attorney fees and costs, and dismissing plaintiff's Wisconsin statutory and common law contract claims.  Dkt. #99-5.  He then issued separate decisions on damages, dkt. #99-6, and attorney fees and costs, dkt. #99-7, and incorporated all of his findings into a final award, dkt. #99-9.

8

As an initial matter, the parties agree that the final award contains a mathematical error relating to the $20,000 incentive fee for named plaintiff Herrington. In particular, on page 2 of the final award, the arbitrator awarded plaintiff $3,318,851 in attorney fees, costs and incentive fees against defendant. Dkt. #99-9 at 2. However, on the next page, the arbitrator stated that plaintiff was entitled to $3,318,851 in attorney fees and costs, plus an additional $20,000 in incentive fees. Id. at 3. Both parties agree that page 3 contains a mathematical error and that the total amount of attorney fees, costs and incentive fees owed plaintiff is $3,318,851. Therefore, I will modify the final award accordingly.

Plaintiff contends that the remainder of the final award should be confirmed, as there is no valid reason to vacate the award under 9 U.S.C. § 10(a)(1)-(4). For its part, defendant argues that the award should be vacated for two reasons: (1) Arbitrator Pratt was biased against defendant; and (2) Arbitrator Pratt committed misconduct by sleeping during portions of the hearing. Neither of defendant's arguments is persuasive.

a. Arbitrator Pratt's alleged bias

Defendant argues that Arbitrator Pratt demonstrated bias in favor of plaintiff when he sent a survey to potential class members as part of his decision whether to certify a class. Defendant points out that when the survey was submitted, discovery on class certification was closed and the arbitrator had stated that plaintiff's evidence supporting class certification was lacking. Additionally, defendant argues that the phrasing of the survey was biased in favor of plaintiff.

I disagree that the survey demonstrates bias against defendant. The questions are simply "yes" and "no" questions regarding the experiences of putative class members. Dkt. #108-7. Further, the arbitrator permitted the parties to argue and submit briefing regarding the survey and issued a written decision explaining his reasons for considering the results. Dkt. ##108-2, 108-6. The arbitrator later issued a well-reasoned 16-page written decision on class certification, explaining the survey results and his conclusion that the results supported class certification. Dkt. #108-8. Finally, the arbitrator made it clear in his decision that he understood the evidentiary limitations of the survey results, noting that, "[o]f course, the questionnaire results cannot be considered as proof that Waterstone has actually violated the FLSA. Such proof, if it exists, must come later. These answers were anonymous and unsworn. They were devoid of context and not subject to cross-examination." Id. at 7. In sum, there is nothing about the arbitrator's decision to send out the survey and consider the responses that suggests bias in favor of plaintiff or against defendant. Defendant also suggests that Arbitrator Pratt made several stray comments that suggested bias, including comments that (1) being an arbitrator was better than being a federal judge because it was more difficult for his decisions to be overturned; (2) an arbitrator's duty was not to follow the law *per se*, but to do what he thought was right and fair; and (3) allowing further discovery regarding class certification would allow him to continue working on, and being paid for, the case, which he found interesting. Dft.'s Br., dkt. #117, at 8. However, as with the survey, nothing about these alleged stray comments demonstrates bias against defendant. Rather, they suggest simply that the arbitrator was interested in this

case and enjoyed arbitrating it.  Such comments are not a basis for vacating an arbitration award.

b.  Arbitrator's alleged sleeping during proceedings

Next, defendant argues that the arbitration award should be vacated because Arbitrator Pratt slept through portions of the evidentiary hearing.  Defendant submits declarations of people attending the hearings who state that Arbitrator Pratt appeared to be sleeping during some testimony, as well as pictures of Arbitrator Pratt with his eyes closed. Dkt. ##114, 128.  Defendant argues that Arbitrator Pratt's alleged sleeping amounts to abdication of his duties and qualifies as misconduct sufficient to justify vacating the arbitration award.  Plaintiff disputes that Arbitrator Pratt slept during the hearing.

Defendant's argument is not persuasive.  There appears to be a factual dispute regarding whether Arbitrator Pratt dozed during portions of the multi-day hearing and if so, when he did so.  As an initial matter, I agree with plaintiff that if defendant believed Arbitrator Pratt was dozing off, defendant should have asked for a break during the hearing. To raise this issue now seems far too late.  But even setting that aside and assuming that the arbitrator dozed off, defendant has pointed to nothing suggesting that it was prejudiced by the alleged napping.  Defendant says that Arbitrator Pratt slept during important testimony, but it has failed to identify any specific testimony that Pratt missed.  For example, defendant does not point to anything in Pratt's final decision on liability as evidence that Pratt misunderstood or missed important testimony.  Defendant's arguments about prejudice are

11

based entirely on speculation.  Therefore, I will not vacate the arbitration award based on defendant's suggestion that Arbitrator Pratt may have been sleeping during portions of testimony that may have been important to his final decision.

In sum, defendant has identified no basis for vacating the arbitration award, with the exception of the mathematical error discussed above.  Accordingly, I will confirm the award with modification of the amount owed in attorneys' fees.

## C. Plaintiff's Motion for Sanctions

Plaintiff has moved for sanctions against defendant, arguing that defendant should be sanctioned because all of its arguments against confirmation of the award were frivolous. I consider this a close question, but will deny it.  I agree with plaintiff that defendant appears to have delayed this litigation far longer than necessary and continues to do so.  However, his arguments opposing confirmation of the award were not wholly frivolous, although they were not persuasive.  Defendant identified the mathematical error in the final arbitration award and pointed out the correct statute regarding post-judgment interest.  Dft.'s Br., dkt. #107, at 20.  Additionally, although I do not believe that defendant's concerns about the arbitrator's not being fully engaged during hearing testimony are sufficient reason to vacate an award, they are not wholly frivolous.  Accordingly, I decline to issue sanctions against defendant for seeking to vacate the award.

ORDER

IT IS ORDERED that

1.   Plaintiff Pamela Herrington's motion to enforce judgment of the arbitration award, dkt. #99, and defendant Waterstone Mortgage Corp.'s motion to vacate arbitration award or, in the alternative, to modify the award, dkt. #112, are GRANTED IN PART and DENIED IN PART as follows:

> The July 5, 2017 arbitration award is CONFIRMED, with a single modification to the amount of attorney fees, costs and incentive fees as follows:  Defendant must pay plaintiff $3,298,851 in attorney fees and costs, and a $20,000 incentive fee to plaintiff Herrington.

2.   Plaintiff is entitled to post-award interest at the rate set under 28 U.S.C. § 1961(a).

3.   Defendant's motion to stay, dkt. #118, is DENIED.

4.   Plaintiff's motion for sanctions, dkt. #125, is DENIED.

Entered this 4th day of December, 2017.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge

13